**No. 13-15368**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

Kim Carson and Jim Carson,
*Plaintiffs and Appellants*,

vs.

Bank of America, N.A.
*Defendant and Appellee*.

---

On Appeal from the United States District Court
Eastern District of California No. 2:12-CV-01487-MCE-CMK
The Honorable Morrison C. England

---

**OPENING BRIEF OF APPELLANT**

---

MELLEN LAW FIRM
Matthew D. Mellen (Cal. State Bar No. 233350)
Jessica R. Galletta (Cal. State Bar No. 281179)
411 Borel Ave., Suite 230
San Mateo, CA 94402
Tel. (650) 638-0120 ● Fax (650) 638-0125

*Attorneys for Appellants*
Kim Carson & Jim Carson

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION………………………………………………………..1

II.     STATEMENT OF JURISDICTION …………………………………..1

III.    ISSUES PRESENTED . …………………………..………………………...3

IV.     STATEMENT OF THE CASE ………………………………………..3

V.      STATEMENT OF FACTS …………………………..…………………...4

       A. Facts Regarding the Willow Property…………………………….5

       B. Facts Regarding the Connecticut Property…………………………...7

VI.     SUMMARY OF THE ARGUMENT …………………………………10

VII.    ARGUMENT …………………………..…………………………10

       A.      Standard of Review………………………..…………………...10

VIII.   The Court Erred In Dismissing the Carsons' Complaint Based on the Tender
       Doctrine………………………………………………………….11

       A.      The Adoption of California Civil Code § 2924c Modified the Doctrine
       of Tender………………………………………………………….11

              1.      The Concept of Tender Originated from the Doctrine of Equity
              As it Pertained to the Right of Redemption…………………..11

              2.      The California Legislature Specifically Created the Right of
              Reinstatement so that a Borrower Would Not Have to Tender
              the Entire Amount of Indebtedness in Order to Save His Home
              From Foreclosure…………………………………………..13

i

a.  Emergence of California Civil Code § 2924c…..13

b.  The Purposes of California Civil Code ………...14

c.  Reinstatement was Intended to Prevent Acceleration…………………………………16

3.  The First California Supreme Court Tender Case After the Right of Reinstatement Was Established Implicitly Held That Tender of the Reinstatement Amount Would be Sufficient to "Do Equity"………………………………………….........18

B.  Recent Cases on Tender Define "Doing Equity" as Whether Or Not the Plaintiff Could Have Prevented the Foreclosure....……………...19

C.  Common Law Doctrines Which Arose Prior to the Adoption of Civil Code § 2924c Cannot Invalidate The Statute………………21

D.  California Authority Provides an Exception to the Tender Doctrine…………………………………………………...22

IX.  THE SUPERIOR COURT ERRED IN DECIDING APPELLANT'S BREACH OF THE COVENANT CLAIM ON TORT PRINCIPLES…….23

A.  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – TORT VS. CONTRACT…………………………..23

B.  APPELLANTS' CAUSE OF ACTION WAS BASED IN CONTRACT, NOT TORT…………………………………………..24

X.  CONCLUSION AND RELIEF REQUESTED………………...................26

STATEMENT OF RELATED CASES………………………………………29

CERTIFICATE OF COMPLIANCE…………………………………………30

CERTIFICATE OF SERVICE……………………………………………………31

## TABLE OF AUTHORITIES

### Cases

Abadie v. Lobero,
     36 Cal. 390 (CA 1868)……………………………………………………..12

Abadie v. Lobero
     ………………………………………………………...…………..13

Abdallah v. United Savings Bank,
     43 Cal.App.4th 1101, 1109 (Cal. App. 1st Dist. 1996)……………………..20

Altman v. McCollum,
     107 Cal.App.2d 847, 860 (1951)……………………………………………18

Anderson v. Heart Fed. Sav.,
     208 Cal. App. 3d 202, 214 (Cal. App. 3rd Dist. 1989)…………………14, 15

Bisno v. Sax,
     175 Cal.App.2d 714 (Cal. App. 2nd Dist. 1949) …………………………17

Brown v. Superior Court,
     212 P.2d 878(Cal. 1929) ………………………………………………….25

Bruntz v. Alfaro,
     212 Cal.App.3d 411(Cal App. 3rd Dist. 1989)……………………………18

Carma Developers, Inc. v. Marathon Dev. Cal , Inc.
     826 P.2d 710(Cal. 1992)……………………………………………….24, 25

Comunale v. Traders & General Ins. Co.,
     328 P.2d 198(Cal. 1958) …………………………………………………..25

Copsey v. Sacramento Bank,
     133 Cal. 659, 662 (CA 1901)… …………………………………………..12

Cornelison v. Kornbluth,
        15 Cal.3d 590, 604 (CA 1975)… ………………………………………16

Egan v. Mutual of Omaha Ins. Co.
        24 Cal.3d 809 (1979)… ……………………………………………..23

Estate of Apple,
        66 Cal. 432, 434 (CA, 1885.)… …………………………………..21

Foley v. Interactive Data Corp.,
        765 P.2d 373, 389…………………………………………..23, 24, 25

Foorman v. Wallace,
        75 Cal. 552, (CA 1888)……………………………………………….12

FPCI RE-HAB 01 v. E & G Invs.,
        207 Cal. App. 3d 1018, 2011 (Cal. App. 2nd Dist. 1989)………………19, 20

Greenberg v. Western Turf Assoc.,
        148 Cal. 126, 128 (CA 1905) …………………………………...21

Hilker v. Western Automobile Ins. Co.,
        231 N.W. 257, 258 (Wis. 1930) …………………………………..25

Humboldt Sav. Bank v. McCleverty,
        161 Cal. 285, 291 (1911) …………………………………………12, 22

Hunt v. Smyth,
        25 Cal.App.3d 807 (Cal. App. 1st Dist. 1972)……………………...17

In re Estate of Elizalde,
        182 Cal 427, (1920)………………………………………………..22

ING Bank v. Ahn,
        2009 WL 2803965, 2 (N.D. Cal. 2009)………………………………22

Karlsen v Am.Sav. & Loan Ass'n,
        15 Cal.App.3d 112, 121 (Cal. App. 2d Dist. 1971)………………………19

Knapp v. Doherty,
     123 Cal. App. 4th 76, 87 (Cal. App. 6th Dist. 2004)…………………………..14

Lass v. Eliassen,
     94 Cal App 175, 270 (Cal App., 1928)…………………………………21-22

Little v. Harbor Pacific Mortgage Investors
     175 Cal.App.3d 717, 720(Cal. App. 4th Dist. 1985)………………………..17

Magnus v. Morrison,
     93 Cal.App.2d 1 (Cal. App. 2nd Dist. 1949) ……………………………....17

Manzarek v. St. Paul Fire & Marine Ins. Co.,
519 F3d 1025, 1030 (9th Cir. 2008)… ……………………………………………10

McMillan v. Richards,
     9 Cal. 365 (CA 1858)…………….. ……………………………………12

Mitsui Mrfs. Bank v. Superior Court,
     260 Cal. Rptr. 793, 795-796 (Cal. Dist. Ct. App. 1989)…………………...24

Munger v. Moor
     11 Cal.App.3d 1, 11(Cal. App. 1st Dist. 1970)……………………………..18

Onofrio v. Rice,
     55 Cal. App. 4th 413, 424 (Cal. App. 4th. Dist. 1997)……………………...22

Outdoor Media Group, Inc. v. City of Beaumont,
     506 F.3d 895, 899 (9th Cir. 2007)……………………………………...10, 11

People v. Mayhew,
     26 Cal. 655 (CA 1864)… ……………………………………………….12

Roseleaf v. Chienghino,
     59 Cal. 2d 35, 43 (CA 1963) …………………………………………16

Sacchi v. Mortgage Electronic Registration System, Inc.,
     2011 US Dist. LEXIS 68007……………………………………………….22

Savings & Loan Soc. v. Burnett,
        106 Cal. 514, 538 (CA 1895) …………………………………………11, 27

Shimpones v. Stickney,
        219 Cal. 637, 678 (1934) …………………………………………………..18

Susilo v. Wells Fargo Bank, N.A.,
        796 F. Supp. 2d 1177, 1188 (N.D. Cal. 2011)………………………….…..15

Sutherland v. Barclays American Mortgage Corp.,
        53 Cal. App. 4th 299, 314. (2nd App. Dist, 1997)…………………………..25

Swartz v. KPMG LLP,
        476 F.3d 756, 763 (9th Cir. 2007)…………………………………………11

Tanner v. Title Ins. & Trust Co.
        129 P.2d 383,389 (Cal. 1942) …………………………………………..24

Walker v. Countrywide Home Loans Inc.
        98 Cal.App.4th 1158, 1174(Cal. App. 2nd Dist. 2002)……………………..17

## Statutes

11 U.S.C. §
1332……………………………………….…………………………..1, 2

12 U.S.C. 1462a, §3(f)… ……………………………………………………13

28 U.S.C. § 1291………………………………………………………………...2

28 U.S.C. § 1441…………………………………………………………...1

28 U.S.C. § 2107(a)… …………………………………………………..3

Cal. Civ. Code § 4………………………………………………………...21

Cal. Civ. Code § 726……………………………………………………...13

Cal. Civ. Code § 2920.5………………………………………………………..27

Cal. Civ. Code § 2924c………………………………1, 3, 10, 13, 14, 16, 18, 19, 26

**<u>Rules</u>**

Ninth Circuit Rule 28-2.2…………………………………………………………………..1

**<u>Other Sources</u>**

Prosser, Law of Torts (4th ed. 1971)…………………………………………...23

Rest.2d Contracts, § 205…..…………………………………………………24

## I.     INTRODUCTION

This appeal challenges the application of the tender doctrine to lawsuits alleging that a borrower's right to reinstatement under California Civil Code 2924c(a)(1) has been violated.  Specifically, Appellants argue it is inequitable to require a borrower to tender the entire amount of his indebtedness when he could have prevented the foreclosure by paying the amount in default, and when that right was violated.   In fact, this common-law requirement completely nullifies the statutory right of reinstatement as it was applied in the case at hand.  In addition, Appellants challenge a lower court ruling dismissing a contract-based cause of action based on inapplicable tort-based principles.  This appeal followed.

## II.     STATEMENT OF JURISDICTION

Pursuant to Ninth Circuit Rule 28-2.2, Plaintiffs-Appellants submit the following statement of jurisdiction:

The United States District Court for the Eastern District of California (the "District Court") had subject matter jurisdiction over this action against Defendant-Appellee Bank of America, N.A. pursuant to 28 U.S.C. § 1441, which provides that any case that could have been commenced in federal court based on diversity of citizenship can be removed from state court on diversity grounds. See 28 U.S.C. § 1441(a).  Pursuant to 11 U.S.C. § 1332, the United States district courts shall have original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000.00 and is between citizens of different states. See 11 U.S.C. § 1332(a).

Bank of America was entitled to remove this action to federal court based on diversity jurisdiction. Kim and Jim Carson are, and at all relevant times were, citizens of the State of California. Bank of America, N.A. is a national bank with headquarters in Charlotte, North Carolina. Since Plaintiffs-Appellants and Defendant were citizens of different states, there is complete diversity of citizenship between the parties. 28 U.S.C. 1332(a)(1). In the underlying case, Plaintiff-Appellants were seeking damages in excess of $75,000.00 for Bank of America's misconduct which resulted in the loss of two properties. Therefore, the amount in controversy requirement is satisfied, as well.

The District Court entered final judgment on all claims for relief in the underlying action on January 30, 2013 (Excerpts of Records ("ER") 1). Plaintiffs-Appellants have not brought a renewed motion for judgment. Therefore, the District Court's judgment is final under Federal Rule of Civil Procedure 54 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiffs-Appellants Kim and Jim Carson appeal from the District Court's Order and resulting Judgment entered on January 30, 2013, in which the Court granted Defendant Bank of America's Motion to Dismiss, thereby dismissing the lawsuit in its entirety. (ER 1-18). The Notice of Appeal was filed on February 22,

2013 and is timely pursuant to 28 U.S.C. § 2107(a) and Federal Rule of Appellate

Procedure 4(a)(1).

## III.    ISSUES PRESENTED

1.    Is it inequitable to demand a borrower pay the entire amount of the

indebtedness to unwind a foreclosure sale when he could have reinstated his

loan under Civil Code § 2924c(a)(1) but was prevented from so doing?

2.    Isn't it more equitable to require a plaintiff whose right of reinstatement has

been violated, to tender the reinstatement amount, pursuant to the tender

doctrine?

3.    Is it an error of law to dismiss a claim for breach of the covenant of good

faith and fair dealing, which is based on interference with contractual terms,

based on tort-based principles governing the tort-based cause of action for

breach of the covenant of good faith and fair dealing?

## IV.    STATEMENT OF THE CASE

On or about May 3, 2012, Plaintiff-Appellants filed the underlying action for

damages and equitable relief resulting from Bank of America's unlawful conduct

in servicing the Carsons' loan account (Lassen County Superior Court Case

Number 55776). On June 1, 2012, Bank of America removed the underlying action

to the United States District Court for the Eastern District of California pursuant to

12 U.S.C. § 1332 based on diversity jurisdiction and, on June 9, 2012, filed a Motion to Dismiss Plaintiffs' Complaint. (ER 392). After amendment and a subsequent motion to dismiss, the Court granted Bank of America's motion to dismiss, giving the Carsons leave to amend their allegations (ER at 269-287). The Carsons did amend their allegations, and Defendant again moved to dismiss the lawsuit. (ER at 244-268, 208-243, respectively). Then, on January 30, 2013, the Court granted Bank of America's motion in its entirety, thereby dismissing lawsuit and resulting in judgment in favor of Bank of America. (ER at 2-18, 1)

       The ruling on Defendant-Appellee's Motion to Dismiss is the subject of this appeal. On or about November 6, 2012, Plaintiffs filed their Second Amended Complaint. (ER at 244-268). Defendant Bank of America filed a Motion to Dismiss the Second Amended Complaint, with the hearing to be held on January 10, 2013. (ER 208-243). On January 30, 2013, having taken the matter under submission and without oral argument, the Court dismissed the majority of the damages claims in the lawsuit because Plaintiffs did not "'allege tender of the amount of [the lender's] secured indebtedness…'" (ER at 10:11-13; 11:8-12; 13:15-17, respectively). In addition, the Court dismissed the Carsons' claim for breach of the covenant of good faith and fair dealing based on inapplicable legal theories. (ER at 12:10-16). That order and subsequent judgment are the subject of this appeal (ER at 19-22).

## V.     STATEMENT OF FACTS

Plaintiff-Appellants Kim and Jim Carson's case arose from Bank of America's repeated interference with the Carsons' right of reinstatement on two loan agreements.

### 1.     Facts Regarding the Willow Property

On or about June 21, 2004, Plaintiffs purchased the property located at 710-405 Willows Street, Susanville, CA 96130, obtaining financing for the purchase with Washington Mutual. (ER at 251.)  In or around 2006, Plaintiffs refinanced the loan with Countrywide Home Loans, executing a Promissory Note and Deed of Trust in favor of Countrywide. (Id.)  Thereafter, Bank of America acquired Plaintiffs' loan for the Willow Property, when it acquired Countrywide Home Loans. (Id.)

Beginning in June 2008, Plaintiffs began a two-year ordeal wherein they repeatedly attempted to modify their loan with Bank of America. (Id.)  However, throughout this process, Bank of America frustrated Plaintiffs' ability to even submit a complete loan modification application for review, as Bank of America repeatedly claimed that it had not received documents which Plaintiffs had confirmation that they had submitted. (Id.)  On or about July 16, 2010, Bank of America caused to be recorded a Notice of Default for the Willow Property, which stated that Plaintiffs were merely $9.841.91 in arrears on their loan as of that date.

5

(ER at 189-192). At that time, Plaintiffs had sufficient money to reinstate their loan and were in the middle of applying for a loan modification, which Bank of America advised them to continue doing. (See ER at 248).  On or about October 25, 2010, Bank of America caused to be recorded a Notice of Trustee's Sale for Plaintiffs' property. (ER at 194-195).  That same day, Plaintiffs were in the middle of finalizing their loan modification application with Bank of America. (ER at 252).  Plaintiffs' property was apparently originally scheduled to sell on November 16, 2010. (ER at 194).  However, Plaintiffs now believe that Bank of America's representatives postponed the sale date while Plaintiffs were in loan modification review.

On December 7, 2010, Bank of America representative Stacy White informed Plaintiffs that they were approved for a modification and that she would send the final documentation to Plaintiffs. (ER at 252).  Ms. White also indicated that Plaintiffs' property would not sell at foreclosure because Plaintiffs had been approved for a modification. (ER at 252-253).  However, on December 14, 2010, while Plaintiffs were awaiting the final modification paperwork, Bank of America sold Plaintiffs Willow property at auction. (ER at 253).  Had Plaintiffs not been told that the property would sell and that they had been approved for a modification, Plaintiffs would have paid to reinstate their loan, as they had

substantial emergency funds and were ready, willing, and able to pay the reinstatement amount.  (ER at 253).

### 2.    Facts Regarding the Connecticut Property

On or about March 14, 2003, Plaintiffs purchased the property located at 365 Connecticut Court, Susanville, CA 96130. (ER at 52).  Thereafter, in April 2006, the Carsons refinanced the loan for their property with Countrywide Home Loans, executing a Deed of Trust in favor of Countrywide Home Loans. (ER at 58). Bank of America later acquired the loan at issue, when it acquired Countrywide Home Loans. (ER at 247).  In June 2009, Plaintiffs began attempting to modify their loan with Bank of America.  (ER at 247).  At that time, Plaintiffs were told that in order to apply for a loan modification, they would have to go late in their payments. (Id.)  Plaintiffs did so and immediately submitted their application materials but were thereafter repeatedly frustrated by Bank of America in their attempts to submit a completed loan modification, as Bank of America constantly claimed to have not received or lost documents Plaintiffs had submitted. (ER at 247-248).

In January 2010, when Plaintiffs contacted Bank of America about their loan modification, Plaintiffs were advised that their documents had been lost and that they had to reapply for a loan modification. (ER at 247).  Plaintiffs did so and thereafter began to experience extreme frustration from Bank of America's

representatives in submitting a complete modification application. (ER at 247-248).

By December 2010, after having been given the run-around for many months, Plaintiffs received a Notice of Intent to accelerate for the Connecticut Property. In response, Plaintiffs withdrew the entire reinstatement amount from their emergency funds and reinstated their loan. (ER at 248). In fact, one of the reasons Plaintiffs did so was because, around the same time, Bank of America sold one of Plaintiffs' other properties (the Willow Property) out from under them. (ER at 253). Thus, Plaintiffs were, understandably, concerned that the same would happen to this property, as well.

Thereafter, Plaintiffs continued to apply for a loan modification at the encouragement of Bank of America. However, by July 2011, Plaintiffs realized that Bank of America had been misleading them the entire time and that their attempts at a foreclosure alternative were futile; so, Plaintiffs began inquiring about repayment plans. (ER at 249). Though Plaintiffs could reinstate their loan in a lump sum payment, they preferred to do so through a repayment plan in order to reserve their emergency funds. (ER at 248-249). For a while, Bank of America was able to convince Plaintiffs that they could cure the arrears through an alternative payment plan. (ER at 248-239) However, by October 2011, Plaintiffs realized Bank of America's sham and that they were being dual tracked by Bank of

America, as Bank of America caused to be recorded a Notice of Default for Plaintiffs' Connecticut property. (Id.)

Therefore, in December 2011, Plaintiffs began trying to reinstate their loan. On or about December 6, 2011, Bank of America caused to be recorded a Notice of Trustee's Sale for their Connecticut Property. (ER at 146). When Plaintiffs received the notice, they contacted Bank of America regarding the notice. (ER at 250). Plaintiffs were ready, willing, and able to reinstate their loan if they were provided the reinstatement amount. (Id.) However, Bank of America never provided reinstatement amounts to Plaintiffs. (Id.)

Finally, Plaintiffs spoke with an individual named Corrina Ramirez, and Ms. Ramirez, while unable to give Plaintiffs reinstatement amounts, assured Plaintiffs they need not worry about the sale, because Bank of America would be postponing the pending sale. (ER at 250). On December 22, 2011, seven days before the sale, Plaintiffs requested another reinstatement calculation but never received a response. (Id.) On December 29, 2011, prior to the sale of the Connecticut Property, Plaintiffs wired a total of $24,500.00 to Defendant, the amount they calculated was sufficient to reinstate their loan. (Id.) Ms. Ramirez confirmed receipt of the funds. (Id.) Despite this fact, Bank of America sold Plaintiffs' property that very same day. (Id.)

## VI.   SUMMARY OF THE ARGUMENT

The argument which follows will establish a serious conflict between the right of reinstatement provided by the legislature in California Civil Code § 2924c and the judicially created doctrine of tender as applied in this case.  The argument will show that the doctrine of tender was developed at a time when only the right of redemption existed and banks had the right to demand the entire accelerated amount of the loan in default situations.  However, since the adoption of the right of reinstatement and abolishment of acceleration as a condition of reinstatement, it is no longer equitable to demand the accelerated amount in a reinstatement dispute.

In addition, the argument which follows regarding breach of the covenant of good faith and fair dealing establishes that it is an error of law for a court to dismiss a contract based claim based on unrelated tort-based theories.

## VII.   AGRUMENT

### A.    Standard of Review

The Ninth Circuit reviews de novo a court's decision to grant a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). (Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F3d 1025, 1030 (9th Cir. 2008)(citing Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007)). When ruling on a motion to dismiss, the Court may "generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

subject to judicial notice." (<u>Outdoor Media Group</u> at 899-900 (quoting <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007)). The Court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. (<u>Id</u>. at 900). The appeal at hand is based on two errors of law the District Court made in dismissing Appellants' lawsuit. First, Appellants contend that it is an error of law to dismiss a lawsuit based on the absence of allegations that a plaintiff-borrower can tender the entire amount of their lender's secured indebtedness. Next, Appellants contend that it is an error of law to dismiss a contract-based claim for breach of the covenant of good faith and fair dealing based on tort-based legal principles.

### VIII.  The Court Erred In Dismissing the Carsons' Complaint Based on the Tender Doctrine.

**A.      The Adoption of California Civil Code § 2924c Modified the Doctrine of Tender.**

#### 1.      The Concept of Tender Originated from the Doctrine of Equity As it Pertained to the Right of Redemption.

The doctrine of tender originated from the concept of "doing equity" as it related to the right of redemption, which at that time was the only remedy available to homeowners whose properties were sold at foreclosure. In 1895, in <u>Savings & Loan Soc. v. Burnett</u>, 106 Cal. 514, 538 (CA 1895), a case involving a foreclosure sale challenged because of fraud, the Court stated that "[u]sually attacks such as

this are made in direct proceedings, accompanied by an offer to do equity." Soon thereafter, in the case of <u>Copsey v. Sacramento Bank</u>, 133 Cal. 659, 662 (CA 1901), involving a challenge to the simultaneous sale and purchase of land by a trustee, the California Supreme Court again recognized a mortgagor's right of redemption and held that "an action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." Likewise, in <u>Humboldt Sav. Bank v. McCleverty,</u> 161 Cal. 285, 291 (1911), a case involving a widow's challenge to the sale of her two parcels of land, the Court made clear that the tender rule was related to the right of redemption when it stated "[i]t has often been held that an action to set aside a sale by trustees or on foreclosure for irregularities of any kind should ordinarily be accompanied by an offer to redeem by paying the sum due."

Most notably, in each of these opinions, the California Supreme Court references the right of redemption in its concept of "doing equity." At that time, redemption was the only remedy available to homeowners whose properties were sold at foreclosure. (<u>Foorman v. Wallace</u>, 75 Cal. 552, (CA 1888); <u>Abadie v. Lobero</u>, 36 Cal. 390 (CA 1868); <u>People v. Mayhew</u>, 26 Cal. 655 (CA 1864); <u>McMillan v. Richards</u>, 9 Cal. 365 (CA 1858). On the contrary, borrowers today have available the right of reinstatement not the right of right of redemption. Since

12

the passage of California Civil Code § 2924c, these authorities are outdated as they do not contemplate the right of reinstatement.

2. **The California Legislature Specifically Created the Right of Reinstatement so that a Borrower Would Not Have to Tender the Entire Amount of Indebtedness in Order to Save His Home From Foreclosure.**

   a. **Emergence of California Civil Code § 2924c**

   In California, the right of reinstatement is a borrower's sole source of protection prior to a non-judicial foreclosure sale.   Prior to 1933, a borrower could only save his home from foreclosure by way of redeeming the property after the completed sale. See Foorman v. Wallace; Abadie v. Lobero; People v. Mayhew; McMillan v. Richards. Redemption allowed a borrower whose property had been foreclosed to reclaim that property by paying in full the balance of the unpaid loan plus costs. Cal. Civ. Code § 726.

   The right to reinstate was statutorily enacted in 1933 in response to the economy as it existed in the face of the Great Depression and the resulting consequences in the event of borrower default.  In 1933, as part of Roosevelt's New Deal, the Federal government enacted the Home Owners Loan Act ("HOLA") and granted to the states the authority to implement statutes restricting a lender's right to demand payments prior to a foreclosure sale.  12 U.S.C. 1462a, §3(f).  California responded to this mandate by eliminating a bank's ability to

13

demand the full sum of an accelerated indebtedness and amending California law to give every homeowner a statutory right to reinstate in the event of default by curing the default rather than tendering the full balance of the loan <u>See</u> Cal. Civ. Code § 2924c, added stats 1933 ch. 642 § 3.  The tender doctrine as applied to the case at hand eviscerates these protections.

### b.     The Purposes of California Civil Code § 2924c.

The comprehensive statutory scheme governing non-judicial foreclosures serves to protect a borrower from the wrongful loss of his property.  It provides the creditor/beneficiary with a remedy against a defaulting borrower, but it also protects the debtor/trustor from the wrongful loss of property by providing statutory notice requirements and a right of reinstatement. <u>Knapp v. Doherty</u>, 123 Cal. App. 4th 76, 87 (Cal. App. 6th Dist. 2004).  There are two purposes for the requirement that a beneficiary send a notice of default. The first purpose is to require the beneficiary to detail the existence of breach prior to invoking the power of sale; the second purpose is to give the trustor notice of the obligations that the beneficiary claims to have been breached. <u>Anderson v. Heart Fed. Sav.</u>, 208 Cal. App. 3d 202, 214 (Cal. App. 3rd Dist. 1989).  Therefore, a borrower's rights and protections afforded under this code, including the right of reinstatement, necessarily depend on the lender's compliance with California law regarding notice. <u>Id</u> at 215 (holding the burden to be on the beneficiary to inform the trustor

correctly about the amounts due to reinstate a defaulted loan); Susilo v. Wells

Fargo Bank, N.A., 796 F. Supp. 2d 1177, 1188 (N.D. Cal. 2011).

In Anderson v. Heart Fed. Sav. & Loan Ass'n, for example, the Court

overturned a trustee's sale after the lender-beneficiary interfered with the debtor's

right of reinstatement. Anderson at 215.  The Anderson case involved a post-

foreclosure suit in which the lender interfered with the debtor's right of

reinstatement by providing varying reinstatement quotes ranging between

$14,878.99 and $40,000.00. Id.  The trustor tendered an amount sufficient to

reinstate his loan, but the lender sold the debtor's property anyway. Id.  The Court

held that the tender was sufficient and that the trustee's sale could be overturned

because the lender interfered with the debtor's right of reinstatement. Id.  In

addition, court said that the 2924c issue turns on "the adequacy of the information

given Anderson by Heart of the amount due at the time of foreclosure sale

necessary to cure the default in principal, interest, and foreclosure costs."

It should be noted that both the Anderson and Susilo cases were cases where

a borrower's right of reinstatement was interfered with, like Carsons, and these

borrowers were allowed to challenge the interference with that right without

tendering the entire amount of the note. Id.  In fact, there is no reported case in

which tender of the entire amount of the note is required in a reinstatement dispute.

California adopted the right of reinstatement to preserve the status quo between lender and borrower.  Courts have found that judicial and non-judicial foreclosures are on par with one another in terms of the rights conferred on each party.  Roseleaf v. Chienghino, 59 Cal. 2d 35, 43 (CA 1963); Cornelison v. Kornbluth, 15 Cal.3d 590, 604 (CA 1975).  For instance, after a judicial foreclosure, a lender has the right to obtain a deficiency judgment for the difference between the amount owed on the note and the amount received at the foreclosure sale, and the borrower has a right to redeem the property after the sale by paying the full balance of the note.  Therefore, under a judicial foreclosure scheme, each party has the right to obtain the full benefit of the bargain.  Conversely, under a non-judicial foreclosure scheme, the borrower has no right to redemption.  Therefore, recognizing the clear inequitable result, the legislature created the right of reinstatement in non-judicial foreclosures which properly protects the borrower, as the right to reinstate preserves the status quo and places lender and borrower in the situation they were in had no default occurred.  Roseleaf at 43.

### c.    Reinstatement was Intended to Prevent Acceleration.

The right of reinstatement under California Civil Code § 2924c is absolute notwithstanding any acceleration clause to the contrary.  Under California law, a mortgagor retains the right of reinstatement as to any default up until five business

16

days prior to the date of a scheduled trustee sale. Cal. Civ. Code §2924c(e).  In the

event of default, a lender must send required statutory notices of the default and

wait the statutorily prescribed amount of time before invoking its power of sale

pursuant to a deed of trust. Cal. Civ. Code § 2924c(a)(1).  This enactment

effectively nullified a bank's ability to demand an accelerated amount of the loan

as a condition of reinstatement by limiting the amounts a lender can demand as a

condition of reinstatement. Specifically, after a notice of default is recorded,

borrowers are responsible only for the amounts stated in the notice of default plus

specific costs and expenses delineated by statute. See Cal. Civ. Code 2924c;

Walker v. Countrywide Home Loans Inc. 98 Cal.App.4[th] 1158, 1174(Cal. App. 2nd

Dist. 2002)(quoting Little v. Harbor Pacific Mortgage Investors 175 Cal.App.3d

717, 720(Cal. App. 4th Dist. 1985)). Thus, even if a lender invokes an acceleration

clause after a borrower default, the lender may only demand the payment of

amounts in default as a condition of reinstatement.  Magnus v. Morrison, 93

Cal.App.2d 1 (Cal. App. 2nd Dist. 1949); Bisno v. Sax, 175 Cal.App.2d 714 (Cal.

App. 2nd Dist. 1949); Hunt v. Smyth, 25 Cal.App.3d 807 (Cal. App. 1st Dist. 1972);

Walker at 1174.  However, the application of the tender doctrine in the case at

hand nullifies reinstatement and essentially brings back acceleration.

        This was clearly not the intention of the legislature in the passage of 2924c

and the creation of the right of reinstatement.  In fact, courts have held that the

statutory right to reinstate one's loan prior to a foreclosure sale by paying amounts in default is so absolute that a party cannot waive their right to reinstatement, expressly by contract or otherwise. Altman v. McCollum, 107 Cal.App.2d 847, 860 (1951).   Similarly, the right to reinstate is absolute and must not be interfered with.  See Munger v. Moor 11 Cal.App.3d 1, 11(Cal. App. 1st Dist. 1970)(recognizing the right to cure default which which occurred after refusal of timely tender.) Bruntz v. Alfaro, 212 Cal.App.3d 411(Cal App. 3rd Dist. 1989), is also instructive.  In that case, the California Third District Court of Appeal held that it was improper for the lender to refuse the borrower's  offer of tender that was sufficient to cover the sums demanded under the note and deed of trust and attorneys' fees as limited by Civil Code § 2924c. Id.    This fits squarely within the Carsons' lawsuit, as the Carsons allege that Bank of America rejected their reinstatement monies which were full and covered all arrears at that point and were tendered prior to the auction.   (ER at 250).

> **3.**     **The First California Supreme Court Tender Case After the Right of Reinstatement Was Established Implicitly Held That Tender of the Reinstatement Amount Would be Sufficient to "Do Equity".**

Controlling California tender authority after adoption of the right of reinstatement indicates that a borrower need only offer the reinstatement amount to do equity.  In Shimpones v. Stickney, 219 Cal. 637, 678 (1934), the first California Supreme Court tender case after the right of reinstatement was established,

18

implicitly held that tender of the reinstatement amount would be sufficient to "do equity." <u>Id</u>. In that case, the Plaintiff-homeowner offered to tender all amounts outlined in the newly adopted California Civil Code 2924c, but, for reasons unclear in the record, her attorney withdrew this offer of tender. <u>Id</u> at 677-678.  The trial court quieted title in the homeowner's favor, but the Court reversed on appeal, holding that the fatal weakness in Plaintiff's case was that she failed to tender the reinstatement amount.  <u>Id</u>.  There was never any indication that it would be proper to require her to tender the entire indebtedness.

## B.     Recent Cases on Tender Define "Doing Equity" as Whether Or Not the Plaintiff Could Have Prevented the Foreclosure.

Courts have held that in order to unwind a completed foreclosure sale, one must do equity in order to receive equity. <u>Karlsen v Am.Sav. & Loan Ass'n</u>, 15 Cal.App.3d 112, 121 (Cal. App. 2d Dist. 1971).  The <u>FPCI</u> court expanded on this ruling, holding that the rationale behind the tender requirement is that any irregularities in a sale do not damage a plaintiff if the plaintiff could not have redeemed the property had the sale procedure been proper.  <u>FPCI RE-HAB 01 v. E & G Invs.</u>, 207 Cal. App. 3d 1018, 2011 (Cal. App. 2nd Dist. 1989).  Thus, the tender requirement is intended to prevent a court of equity from ordering a useless act performed.  <u>Id.</u>  The <u>Abdallah</u> Court affirmed this ruling when it held that a plaintiff must offer to tender before he can challenge irregularities in a foreclosure

sale. <u>See</u> <u>Abdallah v. United Savings Bank</u>, 43 Cal.App.4th 1101, 1109 (Cal. App. 1st Dist. 1996) (citing <u>FPCI</u> at 1021-1022).  It naturally follows from this rationale that, in the case of a borrower who is deprived of his right of reinstatement, equity dictates that he tender the amount to reinstate pursuant to California Civil Code § 2924c because, had the notice procedures been proper, he would have been able to cure his default prior to the sale of the property.  To hold otherwise would effectively nullify the statutory right of reinstatement adopted to avoid this very result!  The case at hand is illustrative of this very point, that a borrower can be forced to tender an accelerated amount despite having never been afforded a right of reinstatement.

In the case at hand, two of Kim and Jim Carson's properties were sold at foreclosure after their lender actively interfered with their ability to reinstate.  With regard to the Willow Property, the Carsons were only $9,000.00 in arrears and could have reinstated their loan, if their lender had not advised them that they had been approved for a loan modification and that the documents were forthcoming. (ER at 252-253).  In fact, Bank of America representative Stacy White explicitly told the Carsons that the property would not be at risk of foreclosure because of the approved modification (<u>Id</u>.) Despite this fact, and in stark contravention of Bank of America's own representations, Bank of America sold the Willow Property out from under the Carsons, when they were ready and able to reinstate the loan. (<u>Id</u>.)

With regard to the Connecticut Property, after having one property sold from under them, the Carsons actively pursued reinstatement of their propert,y but to no avail. (ER at 250). In fact, Bank of America refused to provide a reinstatement figure until *after* the trustee sale was held, even despite having confirmed receipt of the Carsons' reinstatement funds prior to the sale. (ER at 250). To require the Carsons to tender the entire indebtedness of their secured debts when they were deprived of their opportunity to reinstate their loan and cure their default effectively divests the Carsons of their statutory right to reinstate.

## C.     Common Law Doctrines Which Arose Prior to the Adoption of Civil Code § 2924c Cannot Invalidate The Statute

The states have a fundamental right to modify the common law. Greenberg v. Western Turf Assoc., 148 Cal. 126, 128 (CA 1905)(recognizing right of states to modify common law when not acting in contravention of a constitution). Under California law, statutes establish the law of the state respecting the subjects to which the statutes relate and are to be liberally construed to give effect to the objects. Cal. Civ. Code § 4. In fact, the California Civil Code expressly abrogates the common law which allows a common law rule to undermine a statute subsequently adopted. See id ("[t]he rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code"). "When the code speaks, its provisions are controlling." Estate of Apple, 66 Cal. 432, 434 (CA, 1885). And, **"**neither fiction nor maxim may nullify statute." Lass

21

v. Eliassen, 94 Cal App 175, 270 (Cal App., 1928).  Thus, common law cannot remain in force where it has been modified by statute.  In re Estate of Elizalde, 182 Cal 427, (1920) (common law remains in force except so far as it is inapplicable to conditions *or has been modified by statute*)(emphasis added).   And, it is clear that rules of equity cannot govern in matters that are plain and fully covered by positive statute. (Id.)  To require the Carsons to tender the entire amount of their secured indebtedness, as a precondition for maintaining a lawsuit for damages, would allow equity to  wrongfully governing matters which are "plainly and fully covered by statute."

## D.    California Authority Provides an Exception to the Tender Doctrine.

It is well established that in California tender need not be made where it would be inequitable to do so. Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291 (CA 1911).  In fact, in Humboldt, the California Supreme Court said "[i]t is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." Id; see also Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (Cal. App. 4th. Dist. 1997); Sacchi v. Mortgage Electronic Registration System, Inc., 2011 US Dist. LEXIS 68007, 28; ING Bank v. Ahn, 2009 WL 2803965, 2 (N.D. Cal. 2009) for this same proposition.  The Humboldt case provides an answer to this conundrum.  Clearly, tender of the entire indebtedness does not have to be required.  Certainly, in a case

22

in which reinstatement is at issue, only tender of the reinstatement should be required.

## IX.   THE SUPERIOR COURT ERRED IN DECIDING APPELLANT'S BREACH OF THE COVENANT CLAIM ON TORT PRINCIPLES.

### A.   BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – TORT VS. CONTRACT.

A cause of action for breach of the covenant of good faith and fair dealing may sound in contract or tort theory.  "The distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.' Foley v. Interactive Data Corp., 765 P.2d 373, 389 (quoting Prosser, Law of Torts (4th ed. 1971) p. 613). The covenant of good faith and fair dealing was developed in the contract arena and is aimed at making effective the agreement's promises." (Id.)  Because the covenant is a contract term, however, compensation for its breach has almost always been limited to contract rather than tort remedies. Foley at 389.  And, "'[the] precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." Id (quoting Egan v. Mutual of Omaha Ins. Co. 24 Cal.3d 809, 818 [169 Cal. Rptr. 691, 620 P.2d 141(1979).

California indulged a liberal period in which breach of the covenant as a tort theory, including tort damages, was allowed in a number of cases which were clearly arms-length contract disputes.  The California Supreme Court ended the viability of this theory in the seminal case of <u>Foley v. Interactive Data Corp</u>. in which it decided that absent a special relationship, tort damages were not available on a breach of the covenant theory.  The Eastern District Court cites the case of <u>Mitsui Mrfs. Bank v. Superior Court</u>,  260 Cal. Rptr. 793, 795-796 (Cal. Dist. Ct. App. 1989), for the proposition that the breach of the covenant has no place in normal commercial banking transactions. (ER at 12) (citing <u>Mitsui</u> at 729).  In fact, the Court explicitly dismissed Appellant's claim for breach of the covenant of good faith and fair dealing on the round that the complaint alleged no "unique fiduciary relationship" between the parties in which the doctrine was warranted. ER at 12.  While the <u>Mitsui</u> case does analyze the tort theory for breach of the covenant, but it does not analyze the contract theory.  *(*See <u>Mitsui Mrfs. Bank v. Superior Court</u> generally.)  Clearly, contract damages for breach of the covenant clearly do remain, even in a bank related contract action.

## B.    APPELLANTS' CAUSE OF ACTION WAS BASED IN CONTRACT, NOT TORT.

Every contract contains an implied covenant on the part of each party not to prevent or hinder performance by the other party.  (<u>Tanner v. Title Ins. & Trust Co.</u> (Cal. 1942) 129 P.2d 383,389; <u>Carma Developers, Inc. v. Marathon Dev. Cal , Inc.</u>

(Cal. 1992) 826 P.2d 710, 726 (quoting Rest.2d Contracts, § 205).)   The covenant

requires that neither party do anything which will injure the right of the other to

receive the benefits of the agreement. (Brown v. Superior Court, 212 P.2d 878(Cal.

1929).  "The rights of the parties to a contract 'go deeper than the mere surface of

the contract written…' and implied obligations are imposed 'based upon those

principles of fair dealing which enter into every contract.' (Comunale v. Traders &

General Ins. Co., 328 P.2d 198, 200-201(Cal. 1958) (quoting Hilker v. Western

Automobile Ins. Co., 231 N.W. 257, 258(Wis. 1930).)  The covenant of good faith

finds particular application in situations where one party is invested with a

discretionary power affecting the rights of another. (Sutherland v. Barclays

American Mortgage Corp., (2nd App. Dist, 1997) 53 Cal. App. 4th 299, 314.)  Such

power must be exercised in good faith. (Id (citing Carma Developers at 726-727.

     Every contract imposes upon each party a duty of good faith and fair dealing

in its performance and its enforcement.  It is universally recognized that the scope

of conduct prohibited by the covenant of good faith is circumscribed by the

purposes and express terms of the contract. (Foley, at 389.)  As explained in Foley,

under traditional contract principles, the implied covenant of good faith is read into

contracts "in order to protect the express covenants or promises of the contract, not

to protect some general public policy interest not directly tied to the contract's

purpose." (Id at 394.) This in fact is consistent with the general distinction between

breach of the covenant of good faith as recognized in the context of a contract action and that recognized as a tort. (<u>Id</u>.)

Appellants' cause of action for breach of the covenant of good faith and fair dealing was premised on contract theories, not tort. In the case at hand, Appellants claimed that Bank of America breached the covenant of good faith and fair dealing by interfering with the Carsons' ability to reinstate their loan. (ER at 382-383). Despite the fact that the claim was clearly contract based, and Plaintiffs expressed as much in their opposition to Bank of America's Motion to Dismiss, the Court dismissed Appellants; claim for breach of the covenant of good faith and fair dealing on the round that the complaint alleged no "unique fiduciary relationship" between the parties in which the doctrine was warranted. (ER at 12). The problem with this ruling, however, is that the allegations were contract based, not tort based, so the court's ruling based on tort theories is a clear misapplication of the law to the allegations at hand.

## X.    CONCLUSION AND REQUESTED RELIEF

The foregoing argument clearly establishes a serious conflict between the right of reinstatement provided by the legislature in California Civil Code § 2924c and the judicially created doctrine of tender. Because the notion of tendering the entire amount of arrears was developed at a time when only the right of redemption existed, the early case law naturally does not address reinstatement. Since 1933

and the adoption of the right of reinstatement, it needs to be clarified that in order to do equity in a reinstatement dispute, once must only tender the amount necessary to reinstate.  This is consistent with <u>Savings & Loan v. Burnett</u>, <u>Humboldt</u>, and all the cases which follow.  It is also a common sense approach.  In fact, some very perverse outcomes will necessarily follow from requiring payment of the full debt in reinstatement disputes.

In addition, the public policy of California clearly does not condone a foreclosure when a borrower has been deprived of their right of reinstatement. In fact, in the middle of 2012, California Legislature met in a series of special sessions and passed effective January 1, 2013, the newly enacted Homeowners Bill of Rights.  In a preamble to these new sections of the civil code, the Legislature stated the public policy of California:

> "It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued forecloses by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. "

(<u>See</u> Preamble to Cal. Civ. Code § 2920.5, Section 1, sub. (b).  Although new laws exist as of January 1, 2013, which make the conduct which Bank

27

of America engaged in with Appellant unquestionably illegal, numerous

rights existed when the underlying Complaint was filed to protect against

this kind of egregious conduct.  The Eastern District Court denied

Appellants all of those rights.  For all of these reasons, the instant appeal

should be granted.


Dated: July 31, 2013          MELLEN LAW FIRM


                    By: */s/ Jessica Galletta___*
                       Jessica Galletta, Esq
                       Attorneys for Appellants
                       JIM AND KIM CARSON

## <u>STATEMENT OF RELATED CASES</u>

In accordance with Circuit Rule 28-2.6, Appellants Kim and Jim Carson advise the Court that a related case is currently pending before this Court, Narog v. MTC Financial, 9th Circuit Case Number 11-18048.

Dated: August 1, 2013                     MELLEN LAW FIRM

By: */s/ Jessica Galletta___*
        Jessica Galletta, Esq
        Attorneys for Appellants
        JIM AND KIM CARSON

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This brief uses a proportional typeface and 14-point font, and contains 6,579 words.


Dated: July 31, 2013                          MELLEN LAW FIRM


                               By: */s/ Jessica Galletta___*
                                    Jessica Galletta, Esq
                                    Attorneys for Appellants
                                    JIM AND KIM CARSON

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2013, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Ninth

Circuit by using the Appellate CM/ECF system

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

_/s/ Molly Bell_____
Molly Bell

31