No. 13-15368

# United States Court Of Appeals
# For The Ninth Circuit

KIM CARSON AND JIM CARSON,

*Plaintiffs and Appellants*,

vs.

BANK OF AMERICA, N.A.,

*Defendant and Appellee.*

*Appeal from a judgment of dismissal of the United States District Court
for the Eastern District of California, No. CV12-01487 MCE
Hon. Morrison C. England, United States District Judge*

# Appellee's Brief

Jan T. Chilton (State Bar No. 47582)
Jon D. Ives (State Bar No. 230582)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant and Appellee
Bank of America, N.A.

# CORPORATE DISCLOSURE STATEMENT
[Fed. R. App. 26.1]

Pursuant to Fed. R. App. P. 26.1, defendant and appellee states:

Bank of America Corporation, a publicly held corporation, directly or indirectly owns 10% or more of Bank of America, N.A.

# TABLE OF CONTENTS

*Page*

I.    JURISDICTIONAL STATEMENT ................................................................1

II.   ISSUE FOR REVIEW ..............................................................................1

III.  STATEMENT OF THE CASE ....................................................................1

IV.   STATEMENT OF FACTS .........................................................................2

     A.    The Connecticut Court Investment Property .........................................3

     B.    The Willow Street Investment Property ................................................5

     C.    The Derek Drive Property And Suit ....................................................6

V.    STANDARD OF REVIEW .......................................................................7

VI.   SUMMARY OF ARGUMENT ...................................................................8

VII.  THE CARSONS' REINSTATEMENT CLAIMS
     ARE WITHOUT MERIT ........................................................................10

     A.    The Statutory Right To Reinstate A Defaulted Loan ...........................11

     B.    The Right To Redeem, The Tender Rule,
          And The Presumption The Sale Was Conducted Properly .................13

     C.    The Borrower's Right To Reinstate Has Been Harmonized
          With The Doctrines Limiting Suits Attacking Trustee's Sales ...........16

     D.    The Carsons Did Not Effectively Exercise
          Their Right To Reinstate Their Loans ...............................................18

VIII. THE CARSONS' OTHER CLAIMS
     WERE PROPERLY DISMISSED ............................................................21

     A.    The Breach Of Good Faith Claim Was Without Merit ........................21

     B.    The Carsons Have Forfeited Any Challenge
          To The Dismissal Of Their Fraud Claim ...........................................24

     C.    The District Court Correctly Applied
          The Tender Rule To The Remaining Claims .....................................25

## TABLE OF CONTENTS

*Page*

D.    The Carsons' Remaining Claims Fail
Due To A Lack Of Facts Showing Causation Or Damages................27

E.    The Carsons Have No Right To The Relief
They Seek Under Civil Code Section 2924 ........................................29

F.    The Carsons May Not Sue For Breach Of Contract
Having Already Breached The Contracts Themselves ......................30

G.    The Promissory Estoppel Claim Is Defective .....................................32

H.    The Carsons Have No Right To Relief Under
Business And Professions Code Section 17200................................34

IX.    ISSUE PRECLUSION BARS THE CARSONS'
NON-REINSTATEMENT CLAIMS ...............................................................36

X.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
IN DENYING LEAVE TO AMEND...........................................................37

XI.    CONCLUSION.............................................................................................38

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101 (1996)...........................14, 25

*AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012)...................8

*Alperin v. Vatican Bank*, 410 F.3d 532 (9th Cir. 2005)..............................................7

*Anderson v. Heart Fed. Sav.*, 208 Cal.App.3d 202 (1989)......................................20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
      7 Cal.4th 503 (1994)......................................................................................29

*Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575 (1984).........................14, 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................7, 8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council*
      *of Carpenters*, 459 U.S. 519 (1983) ............................................................27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007).....................................................8

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
      685 F.Supp.2d 1094 (E.D. Cal. 2010) ..........................................................27

*Bowen v. Oistead*, 125 F.3d 800 (9th Cir. 1997) .....................................................8

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)........................................................7

*Brown v. Busch*, 152 Cal.App.2d 200 (1957) .........................................................15

*C&K Eng'g Contractors v. Amber Steel Co.*, 23 Cal.3d 1 (1978)...........................33

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
      2 Cal.4th 342 (1992)......................................................................................24

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
      911 F.2d 242 (9th Cir. 1990) .........................................................................37

*Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th 163 (2000) ..........................34

*Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581 (2009) ...............................28

*Day v. AT&T Corp.*, 63 Cal.App.4th 325 (1998)....................................................35

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Deutsch v. Flannery*, 823 F.2d 1361 (9th Cir. 1987)................................36

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256 (2011) .......................14

*FPCI RE-HAB 01 v. E & G Inv., Ltd.*, 207 Cal.App.3d 1018 (1989).....................26

*Gill v. Wells Fargo Bank, N.A.*, 2011 WL 2470678 (E.D. Cal. 2011) ...................15

*Harris v. Wachovia Mortg., F.S.B.*, 185 Cal.App.4th 1018 (2010)........................22

*Hicks v. E.T. Legg & Assoc.*, 89 Cal.App.4th 496 (2001) ................................18, 19

*Hillis v. Heineman*, 626 F.3d 1014 (9th Cir. 2010) ...................................24

*Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911)...............................15

*Independent Towers of Washington v. Washington*,
     350 F.3d 925 (9th Cir. 2003) .........................................................25

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) .......................7

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) .........................................36

*In re Verifone Secs. Litig.*, 11 F.3d 865 (9th Cir. 1993) ...........................................7

*Intengan v. BAC Home Loans Servicing LP*,
     214 Cal.App.4th 1047 (2013).....................................................21

*Kahle v. Gonzales*, 487 F.3d 697 (9th Cir. 2007) ....................................................7

*Kajima/Ray Wilson v. Los Angeles Cnty Metro. Transp. Auth.*,
     23 Cal.4th 305 (2000)......................................................................32

*Kariguddaiah v. US Bank Nat'l Ass'n*,
     2012 WL 6601766 (Cal. Ct. App. 2012)....................................26

*Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal.App.3d 112 (1971) ................14, 15, 25

*Kendall-Jackson Winery, Ltd. v. Super. Ct.*,
     76 Cal.App.4th 970 (1999) ...........................................................33

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).....................................................7

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal.4th 1134 (2003) .....................34

*Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011) ..........................................35, 36

*Lawrence v. Aurora Loan Serv. LLC,*
2010 WL 364276 (E.D. Cal. 2010) ........................................... 27-28, 33, 34

*Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142 (E.D. Cal. 2010)...................22

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.,*
416 F.3d 940 (9th Cir. 2005) ..........................................................................8

*Lona v. Citibank, N.A.*, 202 Cal.App.4th 89 (2011) .................................................15

*Mabry v. Superior Court*, 185 Cal.App.4th 208 (2010) ..........................................17

*Magdaleno v. Indymac Bancorp, Inc.,*
853 F.Supp.2d 983 (E.D. Cal. 2011) ............................................................15

*McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784 (2008) ..............................22

*McElroy v. Chase Manhattan Mortg. Corp.,*
134 Cal.App.4th 388 (2005) ..........................................................................13

*Mikityuk v. Nw. Trustee Serv., Inc.,*
— F.Supp.2d —, 2013 WL 3388536 (D. Or. 2013).....................................17

*Moeller v. Lien*, 25 Cal.App.4th 822 (1994)................................................14, 16, 17

*Munger v. Moore*, 11 Cal.App.3d 1 (1970) .............................................................17

*Nguyen v. Calhoun*, 105 Cal.App.4th 428 (2003) ..................................................14

*Odinma v. Aurora Loan Serv.*, 2010 WL 1199886 (N.D. Cal. 2010) .....................15

*Osei v. GMAC Mortg.*, 2010 WL 2557485 (E.D. Cal. 2010) ..................................15

*Ottolini v. Bank of Am.*, 2011 WL 3652501 (N.D. Cal. 2011) ................................26

*Outdoor Media Group, Inc. v. City of Beaumont,*
506 F.3d 895 (9th Cir. 2007) ...........................................................................7

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118 (1990) ...................29

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Penryn Fruit Co. v. Sherman-Worrell Fruit Co.,*
  142 Cal. 643 (1904) ................................................................13

*Price v. Wells Fargo Bank*, 213 Cal.App.3d 465 (1989).......................................23

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*,
  11 Cal.App.4th 1026 (1992) ..............................................22, 23

*Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n*,
  55 Cal.4th 1169 (2013) ...........................................................23

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................24

*Salameh v. Tarsadia Hotel*,
  — F.3d —, 2013 WL 4055825 (9th Cir. 2013).................................8

*Saldate v. Wilshire Credit Corp.,*
  686 F.Supp.2d 1051 (E.D. Cal. 2010) ..........................................15

*Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141 (E.D. Cal. 2010)........................22

*Smith v. Allen*, 68 Cal.2d 93 (1968) ...................................................................13

*Smith v. San Francisco*, 225 Cal.App.3d 38 (1990) ..............................................33

*Stebley v. Litton Loan Serv., LLP*, 202 Cal.App.4th 522 (2011)..........................17

*Stevens v. Plumas Eureka Annex Min. Co.*, 2 Cal.2d 493 (1935)..........................15

*Sutherland v. Barclays Am./Mortg. Corp.,*
  53 Cal.App.4th 299 (1997) .......................................................32

*United States ex rel. Chunie v. Ringrose*, 788 F.2d 638 (9th Cir. 1986)..................7

*U.S. Cold Storage v. Great W. Sav. & Loan Ass'n,*
  165 Cal.App.3d 1214 (1985) ....................................................14

*U.S. Ecology, Inc. v. California*, 129 Cal.App.4th 887 (2005) ........................32, 33

*Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229 (1997).....................27

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).....................................................1

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Wall St. Network, Ltd. v. New York Times Co.,*
164 Cal.App.4th 1171 (2008) ....................................................................30

*Zucco Partners v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ............................7

*Statutes*

United States Code
    Title 28
        Section 1291 ....................................................................1
        Section 1332 ....................................................................1
        Section 1348 ....................................................................1

Federal Rules of Civil Procedure
    Rule 8 ....................................................................7
    Rule 9 ....................................................................7, 24
    Rule 12 ....................................................................6, 7, 36

Business and Professions Code
    Section 17200 ....................................................................25, 34, 35
    Section 17203 ....................................................................35
    Section 17204 ....................................................................35

Civil Code
    Section 7 ....................................................................21
    Section 7.1 ....................................................................21
    Section 9 ....................................................................21
    Section 1501 ....................................................................13
    Section 2076 ....................................................................13
    Section 2903 ....................................................................13
    Section 2923.5 ....................................................................17
    Section 2924 ....................................................................16. 25. 29
    Section 2924c ....................................................................3, 8, 9, 11, 12, 18-21, 30

California Statutes 1990, chapter 657. section 3 ....................................................................20

*Other Authorities*

California Jurisprudence Third (2013)
    Volume 27, Deeds of Trust, section 282 ....................................................................13

# TABLE OF AUTHORITIES

*Page(s)*

*Other Authorities*

Miller & Starr, California Real Estate(3d ed. 2003)
    Volume 4
        Section 10:186 ........................................................................11, 18
        Section 10:188 ................................................................................13
        Section 10:189 ................................................................................16
        Section 10:195 ................................................................................13
        Section 10:196 ................................................................................13
        Section 10:197 ................................................................................13
        Section 10:212 ................................................................................15
        Section 10:219 ................................................................................13

# I.

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction over this case because plaintiffs Kim Carson and Jim Carson are California citizens, defendant Bank of America, N.A. ("BofA.") is a North Carolina citizen,[1] and the amount in controversy between the parties exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

A final judgment of dismissal was entered on January 30, 2013.  E.R. 1.  Plaintiffs Kim and Jim Carson filed their notice of appeal on February 22, 2013.  E.R. 19.

# II.

## ISSUE FOR REVIEW

Was the second amended complaint ("SAC") properly dismissed without leave to amend?

# III.

## STATEMENT OF THE CASE

The Carsons filed this suit in June 2012.  E.R. 391-92.  After BofA moved to dismiss their original complaint, the Carsons filed a first amended complaint.  E.R.

---

[1]  BofA is a national bank with its main office in Charlotte, North Carolina.  "[A] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of incorporation, is located."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).

369-90; 393.  BofA again moved to dismiss.  E.R. 322-47.  The district court granted the motion to dismiss with leave to amend.  E.R. 269-87.

The Carsons filed a second amended complaint ("SAC").  E.R. 244-68.  It alleged that BofA interfered with their contractual and statutory right to reinstate two defaulted mortgage loans and attempted to state claims for:  (1) violation of California Civil Code § 2924; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) reformation of contract;[2] (5) promissory estoppel; (6) fraud; and (7) violation of California Business and Professions Code § 17200.

BofA again moved to dismiss.  E.R. 208-43.  Finding that the SAC stated no claim for relief, the district court granted this motion to dismiss without further leave to amend.  E.R. 2-18.  A judgment of dismissal was entered on January 30, 2013. E.R. 1.

## IV.

## STATEMENT OF FACTS

The Carsons are sophisticated real estate investors who owned several invest-ment properties in Susanville at the height of the housing boom.  *See* BofA's Request for Judicial Notice ("RJN"), Ex. A.  They run a vacation rental property business

---

[2]    In their response to BofA's motion to dismiss, the Carsons requested that their "reformation of contract cause of action be abandoned."  E.R. 35.

called "Carson Properties" or "Carson Chalets" (www.carsonchalets.com). Kim Carson also worked for various financial institutions, including BofA, as a loan officer.

The Carsons filed two lawsuits about three of their investment properties. This suit involves the Connecticut Court and Willow Street properties described below. The Carsons' third property, on Derek Drive, was the subject of a separate lawsuit. *Kim & Jim Carson v. Bank of America, N.A.*, E.D. Cal. Case No. 2:12-cv-00739-MCE ("Derek Drive suit"). It is briefly described below as well since the unappealed judgment of dismissal in that action operates as collateral estoppel of the Carsons' similar claims in this suit.

## A.    The Connecticut Court Investment Property

In 2006, the Carsons obtained a $176,000 loan from Countrywide Home Loans, Inc., executing a promissory note and deed of trust encumbering their property at 365 Connecticut Court in Susanville, California. E.R. 58-77; 247. BofA later acquired Countrywide and assumed responsibility for servicing the loan. E.R. 247.

The Carsons defaulted. A notice of default was recorded in August 2011. E.R. 141-44. As required by Civil Code § 2924c, the notice of default told the Carsons that they had "the legal right to bring [their] account in good standing by paying all of [their] past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of [their] account, which is normally five business days prior to the date set for the sale …." E.R. 141. It further informed them that "**Upon your**

**written request**, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay." E.R. 141 (emphasis added).

The Carsons sought to modify the loan in late 2011. E.R. 249. BofA assigned Corrina Ramirez as their contact person. E.R. 249.

On December 6, 2011, a notice of trustee's sale was recorded, setting a sale date of December 29, 2011. E.R. 146. "At some point" after receiving the notice, the Carsons "repeatedly called Defendant to inquire about … how much the reinstatement amount was" until they finally spoke with Ms. Ramirez, who advised that "she would be sure that [BofA] would postpone the pending sale." E.R. 250.

On December 22, 2011, four business days before the trustee's sale,[3] the Carsons orally requested a reinstatement calculation from BofA, but it did not provide one. E.R. 250. On December 29, 2011, the day of the sale, the Carsons wired BofA approximately $24,500.00 by two wires, one at 9:00 A.M. and the other at 11:00 A.M. E.R. 250. After wiring the funds, the Carsons contacted Ms. Ramirez, who "assured Plaintiffs that they would notify Defendant's attorneys of the wire transfers and that their Property would not go to sale." E.R. 250.

At about 2:00 P.M. on December 29, 2011, the trustee's sale of the Connecticut Court property was held. A third party bought the property. E.R. 150-53, 250.

---

[3]    December 24, 25, and 26, 2011 were, respectively a Saturday, Sunday and legal holiday.

The Carsons alleged they had substantial emergency funds and "at all times were ready, willing, and able to reinstate their mortgage…." E.R. 251. They did not allege, however, that they ever made a written request for a reinstatement amount before the trustee's sale or ever attempted to reinstate more than five business days before the scheduled trustee's sale.

## B.    The Willow Street Investment Property

In 2006, the Carsons obtained a $116,250 loan from Countrywide Home Loans, Inc., executing a promissory note and deed of trust encumbering another  investment property at 710-405 Willow Street, Susanville.  E.R. 162-83, 251.  After acquiring Countrywide, BofA assumed responsibility for servicing the loan.  E.R. 251.

The Carsons defaulted.  A notice of default was recorded in July 2010.  E.R. 189-92.  Two notices of trustee's sale were recorded, the latter setting a sale date of December 14, 2010.  E.R. 194-95, 199-200.

On December 7, 2010, the Carsons called and spoke with BofA representative Stacy White who said they had been approved for a loan modification.  E.R. 252. "Ms. White also told Plaintiffs that their home would not be sold at a Trustee's Sale because they had been approved for a modification."  E.R. 253.

The Willow Street property was sold on December 14, 2010, as noticed.  E.R. 204-07; 253.  The Carsons alleged that they "were ready, willing, and able to tender the entire reinstatement amount."  E.R. 253.  The Carsons, however, made no allega-

tion that they ever requested a reinstatement amount in writing or otherwise before the trustee's sale or ever attempted to reinstate their Willow Street loan.

## C.    The Derek Drive Property And Suit

The Carsons' other lawsuit against BofA concerned their loan on a third investment property at 135 Derek Drive, Susanville.  *See* BofA's RJN, Ex. A.  In the Derek Drive lawsuit, the Carsons alleged that BofA induced them to default on their loan in order to become eligible for a loan modification, then failed to respond to the Carsons' efforts to find out the state of their loan modification, and finally recorded a notices of default and trustee's sale on the property despite having repeatedly assured the Carsons not to worry about missing loan payments.  *See* RJN, Ex. A, ¶¶ 15-27.

Like the SAC in this case, the second amended complaint in the Derek Drive suit attempted to allege claims for:

1. Wrongful foreclosure or violation of Civil Code § 2924, et seq., *compare* E.R. 253:22-256:16 *with* RJN, Ex. A, ¶¶ 64-70.

2. Breach of the implied covenant of good faith, *compare* E.R. 257:20-260:21 *with* RJN, Ex. A, ¶¶ 31-43

3. Promissory estoppel, *compare* E.R. 261:27-263:8 *with* RJN, Ex. A, ¶¶ 57-63.

4, Fraud, *compare* E.R. 263:11-265:15 *with* RJN, Ex. A, ¶¶ 44-56.

5. Violation of Business and Professions Code § 17200, *compare* E.R. 265:17-266:22 *with* RJN, Ex. A, ¶¶ 71-78.

The district court granted BofA's motion to dismiss the Derek Drive suit without leave to amend, concluding it failed to state a claim on which relief could be

granted.  RJN, Ex. B.  A judgment of dismissal was entered.  RJN, Ex. C.  The Carsons did not appeal.  *See* RJN, Ex. D.

## V.

## STANDARD OF REVIEW

This Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) de novo.  *Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  The complaint's properly pleaded facts are presumed true.  Conclusions of law are not.[4]  The Court also considers facts which may be judicially noticed[5] or which appear from documents "whose contents are alleged in a complaint and whose authenticity no party questions"—even if the documents are not physically attached to the complaint.[6]

Under Fed. R. Civ. P. 8 and 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausi-

---

[4]  *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993); *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n. 2 (9th Cir. 1986).

[5]  *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009); *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

[6]  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

bility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In reviewing an order of dismissal for failure to state a claim, the Court is not limited to the reasoning given by the district court, but may affirm the dismissal on any ground that finds support in the record, even if the district court did not reach the issue or relied on different grounds or reasoning. *Salameh v. Tarsadia Hotel*, — F.3d —, 2013 WL 4055825, at *2 (9th Cir. 2013); *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 950 (9th Cir. 2005).

Dismissal of a complaint without leave to amend is reviewed for abuse of discretion. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). To preserve error in the district court's denial of leave to amend, a plaintiff must show that he or she requested leave to amend in the district court and explained to that court how he or she could amend the complaint to state a claim meeting Rule 8(a) or 9(b) standards. *See Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997).

## VI.

## SUMMARY OF ARGUMENT

The Carsons' primary argument on appeal is that California's "tender rule" has been abrogated by California Civil Code § 2924c. Not so. Section 2924c has co-existed comfortably with the tender rule for the past 80 years. The statute permits a

defaulted borrower to reinstate the loan by paying the arrearage, plus late and attorney fees, up until five business days before a scheduled trustee's sale. Thereafter, the borrower may redeem the property by paying the entire outstanding loan balance before the trustee's sale, or, to allege any viable claim to set aside the sale, must tender the same amount.

The Carsons never properly invoked their right to reinstate either the Connecticut Court or Willow Street loans. They never requested a reinstatement figure for either property *in writing*, as Civil Code § 2924c requires. Nor did they attempt to pay or tender the reinstatement amount on either property within the time allowed under § 2924c(e).

Since the Carsons did not properly exercise their right to reinstate either loan and waited until after the trustee's deeds had been recorded before filing suit, the district court correctly applied the tender rule and required the Carsons to plead their willingness and ability to pay the entire secured obligation as a precondition to seeking relief on their claims implicitly integrated with the supposedly wrongful sale.

Aside from the tender rule, the Carsons' discuss only one of their causes of action in their opening brief—their claim for breach of the implied covenant of good faith and fair dealing claim. Contrary to the Carsons' argument, the claim cannot succeed based on the Carsons' reinstatement averments since they never properly exercised that right and were not prevented from doing so by any act or omission of

BofA.  The rest of the claims allegations concern negotiations for a loan modification to which the implied covenant does not apply.

The Carsons offer no argument that the district court incorrectly dismissed their fraud claim for being defectively pleaded and lacking reasonable reliance and have therefore waived any challenge to this holding.  The rest of their claims lack merit for reasons stated below.  The doctrine of issue preclusion also bars the Carsons' fraud and other claims based on the judgment dismissing the Carsons' Derek Drive suit.

Accordingly, the judgment of dismissal should be affirmed.

## VII.

## THE CARSONS' REINSTATEMENT CLAIMS
## ARE WITHOUT MERIT

The Carsons devote most of their opening brief to arguing that even though California's tender rule and the borrower's statutory right to reinstate a defaulted loan have co-existed for the past 80 years, there nevertheless continues to be a "serious conflict" between the two—a supposed conflict which no published decision has noted despite the passage of eight decades.  AOB 10-22.

The Carsons' argument is wrong.  California harmonized the two rules some time ago.  Moreover, the argument is irrelevant.  The Carsons never effectively invoked their right to reinstate their loans.

**A.      The Statutory Right To Reinstate A Defaulted Loan**

Civil Code section 2924c(a) grants a borrower a statutory right to reinstate a defaulted real-estate secured loan.  One treatise succinctly summarizes the effect of the cited statute as follows:

> When a notice of default has been recorded, the trustor, … can reinstate the delinquent debt and "cure" the default by the payment of delinquencies and costs at any time until five "business days" prior to the date of sale if the power of sale is exercised ….

4 Miller & Starr, Cal. Real Estate, § 10:186, p. 575 (3d ed. 2003) (fns. omitted).

To exercise this right, the borrower/trustor must pay or tender all sums then due on the defaulted debt, plus accrued costs and fees, but not the portion of the principal due only because the debt was accelerated after default.[7]

Under § 2924c(e), the borrower may reinstate the loan by paying these sums at any time "until five business days prior to the date of sale set forth in the initial re-

---

[7]   Section 2924c(a)(1) provides that to reinstate the loan, the borrower must pay "the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, … which are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees … other than the portion of principal as would not then be due had no default occurred ….

corded notice of sale."[8]  The statute makes it clear that this five-business-day deadline is an absolute drop-dead date beyond which there is no right to reinstate:

> [N]o beneficiary … shall be liable in any manner to a trustor … for the failure to allow a reinstatement … during the period of five business days prior to the [trustee's] sale …, and no such right of reinstatement during this period is created by this section.  Any right of reinstatement created by this section is terminated five business days prior to the date of sale ….

Civ. Code § 2924c(e).

To help the borrower/trustor exercise the right to reinstate the loan, the statute requires that the notice of default state the amount then past due and provide name and address of the person or entity the borrower may contact to "find out the amount you must pay."  Civ. Code § 2924c(b)(1).  Also, the notice of default must, and those sent the Carsons did, also contain the following instruction:

> Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

Civ. Code § 2924c(b)(1); E.R. 141, 189.

---

[8]   If the sale date is later continued for more than five business days, the borrower may exercise the right to reinstate the loan until five business days before the continued date.  Civ. Code § 2924c(e).

If the beneficiary fails to provide a statement of the reinstatement amount, or the borrower/trustor thinks the beneficiary's demand is excessive, the borrower/trustor may still reinstate by paying or tendering the amount he or she thinks is owed.  4 Miller & Starr, Cal. Real Estate § 10:188, pp. 579-580 (3d ed. 2003); *see also* 27 Cal. Jur. 3d, Deeds of Trust § 282 (2013).  Unless the beneficiary promptly notifies the borrower/trustor of any objection to the amount or method of the payment or tender, the objection is waived.  *Id.* at 581; Civ. Code §§ 1501, 2076; *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal.App.4th 388, 393-94 (2005).

## B.    The Right To Redeem, The Tender Rule, And The Presumption The Sale Was Conducted Properly

After the right to reinstate lapses at the end of the sixth business day before the scheduled date of the trustee's sale, the borrower/trustor may still redeem the property, avoiding foreclosure by paying the entire accelerated balance due on the loan, plus fees and costs.  Civ. Code § 2903; 4 Miller & Starr, *supra,* §§ 10:195-10:197, pp. 613-19.

After a trustee's sale under a deed of trust, the borrower/trustee may no longer redeem the property.  *Id.* at § 10:219, p. 735; *Penryn Fruit Co. v. Sherman-Worrell Fruit Co.*, 142 Cal. 643, 645 (1904) ("Under such deeds of trust there is no redemption after sale pursuant to its provisions.").  A properly conducted nonjudicial foreclosure sale operates as a final adjudication of the rights of the borrower and lender. *Smith v. Allen*, 68 Cal.2d 93, 96 (1968).

After a trustee's sale, the borrower/trustor's opportunity to sue to set the sale aside is severely limited by several doctrines designed to ensure the certainty of title and "to ensure that a properly conducted sale is final between the prties and conclusive as to a bona fide purchaser." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App.4th 256, 270 (2011); *Moeller v. Lien*, 25 Cal.App.4th 822, 830, 832 (1994).

One of those doctrines is the tender rule under which "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (1984). "A valid and viable tender of payment of the indebtedness is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 117 (1971); *accord Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996).

This tender rule applies to any cause of action that seeks redress from foreclosure.[9] The tender rule is strictly enforced. *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439 (2003). Absent an alleged and actual tender, the complaint fails to state a viable

---

[9] *See Abdallah*, 43 Cal.App.4th at 1109; *U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1225 (1985); *Arnolds Mgmt. Corp.*, 158 Cal.App.3d at 579.

claim to challenge or set aside the foreclosure sale or any other claim "implicitly integrated" into the sale.[10] *See* E.R. 9:13-10:7.

There are only four relatively narrow exceptions to the tender rule: (1) if the borrower's action attacks the validity of the underlying debt, (2) if the borrower claims an offset or counter-claim, (3) if it would be inequitable to impose the tender requirement,[11] and (4) if the trustee's deed is void, rather than just voidable. *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112-13 (2011).

Another doctrine protecting nonjudicial foreclosure sales against attack is the presumption that the trustee's sale has been conducted regularly and fairly. *Stevens v. Plumas Eureka Annex Min. Co.*, 2 Cal.2d 493, 497 (1935); *Brown v. Busch*, 152 Cal. App.2d 200, 204 (1957). When, as was true in this case, the trustee's deed upon sale recites compliance with statutory sale procedures and the property is sold to a bona

---

[10]  *See Karlsen*, 15 Cal.App.3d at 117-20; *Abdallah*, 43 Cal.App.4th at 1109; 4 Miller & Starr, *supra*, § 10:212, pp. 653-54; *Arnolds Mgmt. Corp.*, 158 Cal.App.3d at 579; *Magdaleno v. Indymac Bancorp, Inc.*, 853 F.Supp.2d 983, 991 (E.D. Cal. 2011); *Saldate v. Wilshire Credit Corp.*, 686 F.Supp.2d 1051, 1059–61 (E.D. Cal. 2010).

[11]  Contrary to the Carsons' argument, AOB 22, this exception does not apply to a claim that the trustee's sale should be set aside because the beneficiary thwarted the borrower/trustor's attempt to reinstate the loan. In fact, only one published decision, *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911), has ever relied on the "inequitable" exception, and it did so in unusual circumstances easily distinguishable from this case and others. *See Arnolds Mgmt. Corp.*, 158 Cal.App.3d at 579; *Gill v. Wells Fargo Bank, N.A.*, 2011 WL 2470678, at *5 (E.D. Cal. 2011); *Osei v. GMAC Mortg.*, 2010 WL 2557485, at *6 (E.D. Cal. 2010); *Odinma v. Aurora Loan Serv.*, 2010 WL 1199886, at *3 (N.D. Cal. 2010).

fide purchaser, this presumption is conclusive. Civ. Code § 2924(c); *Moeller,* 25 Cal. App.4th at 831; *see* E.R. 150, 204.

## C. The Borrower's Right To Reinstate Has Been Harmonized With The Doctrines Limiting Suits Attacking Trustee's Sales

Contrary to the Carsons' argument, there is no serious conflict between the borrower/trustor's statutory right to reinstate the loan and either the tender rule or the presumption of regularity of the trustee's sale.

If the beneficiary interferes with the borrower/trustor's efforts to reinstate the loan or refuses to accept payment or tender of the reinstatement sum, the borrower/trustor's principal—and most effective—remedy is to sue for an injunction restraining the sale.

> When the beneficiary fails or refuses to inform the trustor of the amount required to cure the default, the trustor should be able to tender the amount he or she reasonably believes to be due, if any, and enjoin the foreclosure until a proper demand is made by the beneficiary, and should recover attorney's fees and costs incurred to obtain the injunction.

4 Miller & Starr, *supra,* § 10:189, p. 584 (fn. omitted).

Neither the tender rule nor the presumption that the foreclosure sale is regularly conducted apply to such a suit to enjoin foreclosure.

However, to promote the finality of the sale and protect the rights of any bona fide purchaser, both the tender rule and the presumption of regularity apply to any suit brought after the trustee's sale is held and the trustee's deed upon sale is recorded.[12]

> The conclusive presumption precludes an attack by the trustor on a trustee's sale to a bona fide purchaser even though there may have been a failure to comply with some required procedure which deprived the trustor of his right of reinstatement or redemption. The conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser *even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor*.

*Moeller*, 25 Cal.App.4th 831-32 (citations omitted; emphasis added).

Even when the tender rule or conclusive presumption preclude the borrower/trustor from suing to set aside the sale, he or she is not left totally without a remedy if the beneficiary has improperly refused to accept the payment or tender of the reinstatement amount. "Where the trustor is precluded from suing to set aside the foreclosure sale, the trustor may recover damages from the trustee" measured by the difference between the property's market value on the date of sale and the entire secured indebtedness. *Moeller*, 25 Cal.App.4th at 832 (*citing Munger v. Moore*, 11 Cal. App.3d 1, 9, 11 (1970)).

---

[12]  For similar reasons, a borrower may sue to enjoin foreclosure for a lender's failure to comply with Civil Code § 2923.5, but may not sue to set aside a completed trustee's sale on that ground. *See Stebley v. Litton Loan Serv., LLP*, 202 Cal.App.4th 522, 526 (2011); *Mabry v. Superior Court*, 185 Cal.App.4th 208, 235 (2010); *see also Mikityuk v. Nw. Trustee Serv., Inc.*, — F.Supp.2d —, 2013 WL 3388536, at *6-10 (D. Or. 2013) (barring post-foreclosure remedy under Oregon law for similar reasons).

Thus, California has already harmonized its statutory right to reinstatement with the doctrines limiting post-foreclosure suits to set aside trustee's sales. There is no "serious conflict" between the two. Moreover, as shown below, the question is not even properly raised in this case since the Carsons failed to properly exercise their right to reinstate their loan.

### D. The Carsons Did Not Effectively Exercise Their Right To Reinstate Their Loans

The Carsons' arguments about reinstatement and tender are not only wrong, for the reasons mentioned above, but also beside the point because the Carsons never effectively exercised their right to reinstate either of the loans involved in this case.

As already mentioned, the right to reinstate the loan exists only until five business days before the scheduled trustee's sale. Civ. Code § 2924c(e); *see* pp. 11-12 above. Thus, to effectively exercise that right, the borrower/trustor must pay or tender the correct reinstatement sum on or before the sixth business day before the sale date.[13]

---

[13] "Reinstatement is allowed 'until five business days prior to the date of sale.' The use of the term 'until' indicates that the last permissible day for reinstatement is the sixth day preceding the date of the sale, but if the sixth day is a holiday, the last day for reinstatement would be the preceding business day." 4 Miller & Starr, *supra*, §10:186, p. 576; *accord Hicks v. E.T. Legg & Assoc.*, 89 Cal.App.4th 496, 510 n. 9 (2001) ("Reinstatement … is not a matter of right 'during the period of five business days prior to the date of sale.' ").

The Carsons' second amended complaint does not allege that the Carsons ever paid or tendered a reinstatement amount on the loan secured by their Willow Street property.  *See* E.R. 251:6-253:14.  The pleading *does* allege that the Carsons made two payments attempting to reinstate their other loan, secured by their Connecticut Court property.  E.R. 250:15-25.  However, those payments were made on the very day of the foreclosure sale—in other words, well after the reinstatement period had lapsed.  *Id.*

With respect to the Connecticut Court property only, the Carsons make two additional allegations regarding reinstatement:  (1) They repeatedly called BofA "to find out how much the reinstatement amount was" but were put on hold or transferred until they hung up, and (2) on December 22, 2011—seven days before the trustee's sale scheduled on December 29, 2011—they telephoned BofA again and "ordered from Defendant a reinstatement calculation" which BofA never provided.  E.R. 250:1-14.

Neither of these allegations show that the Carsons effectively exercised, or that BofA wrongly interfered with their exercise of, their right to reinstate their loan.  As the statutorily mandated wording of a notice of default makes clear, a borrower may obtain a statement of the reinstatement amount from the beneficiary "[u]pon your written request."[14]  Civ. Code § 2924c(b)(1); E.R. 141, 189; *see Hicks*, 89 Cal.

---

[14]  The paragraph starting with the words "Upon your written request" were added to § 2924c(b)(1) in 1990 as part of a measure intended "to supersede the holding in"

(Fn. cont'd)

App.4th at 509 ("The notice of default required the Hickses to make any request for reinstatement information in writing.").

The Carsons never sent BofA a *written request* for an itemization of the reinstatement amount. Section 2924c did not require BofA to respond to the Carsons' oral requests by telephone.

Moreover, even if a telephone request sufficed, the Carsons allege they actually requested a reinstatement calculation orally only once—on December 22. E.R. 250:10-14. According to their complaint, on all their prior attempts, the Carsons had hung up before they were connected to a BofA representative to make that request. E.R. 250:1-9.

December 22 was already too late, however. The reinstatement period had expired on December 20.[15]

---

(Fn. cont'd)

*Anderson v. Heart Fed. Sav.*, 208 Cal.App.3d 202 (1989). *See* Cal. Stats. 1990, ch. 657, § 3. *Anderson* had held that the reinstatement amount could not include sums then due but not listed on the notice of default as being in default. *Id.* at 214-15. It also held that the borrower had tendered a sufficient sum to reinstate the loan by tendering more than the amount listed in the notice of default even though he had orally requested and been orally told that considerably more was due. *Id.* at 216-17. The 1990 legislation fixed both of these problems by adding to the notice of default the paragraph at issue here and the preceding paragraph. As oral requests and reinstatement quotes had caused problems in *Anderson*, the Legislature provided for written requests and written itemizations of the entire reinstatement amount.

[15] Of the seven days between December 22, the date of the Carsons' telephone request, and December 29, the date scheduled for the trustee's sale, only four were "business days" because December 24 was a Saturday, December 25, a Sunday, and

(Fn. cont'd)

In short, the Carsons' own allegations show they never exercised their reinstatement rights in a timely or appropriate manner. So their claims regarding were properly dismissed. Their pleaded ability and willingness to tender reinstatement amounts post-foreclosure sale, *see* E.R. 251:3-5, 253:12-14, is too little, too late. *See Intengan v. BAC Home Loans Servicing LP*, 214 Cal.App.4th 1047, 1053 (2013) ("Intengan's third amended complaint alleges her willingness 'to tender the appropriate and reasonable mortgage payments.' That allegation, however, is plainly insufficient. A valid tender of performance must be of the full debt, in good faith, unconditional, and with the ability to perform.").)

## VIII.

## THE CARSONS' OTHER CLAIMS
## WERE PROPERLY DISMISSED

### A.    The Breach Of Good Faith Claim Was Without Merit

Apart from its general dissertation on reinstatement, the Carsons' opening brief specifically addresses only one of the claims their SAC alleged—the third cause of action for breach of the implied covenant of good faith. As to that claim, the opening brief makes only two points: The claim sought recovery in contract, not tort, and

---

(Fn. cont'd)

December 26, an official holiday since Christmas had fallen on Sunday. Since BofA is a bank, each of those three days is considered a holiday, not a business day. *See* Civ. Code §§ 7, 7.1(b), (c), (q), 9, 2924c(e). So, December 22 was the fourth business day before December 29, already too late to reinstate the Carsons' loan.

BofA "breached the covenant of good faith and fair dealing by interfering with the Carsons' ability to reinstate their loan." AOB 24-26.

Neither point suffices to show any error in dismissal of the breach of implied covenant claim. As the Carsons concede, California does not permit recovery in tort for breach of the implied covenant except in the insurance context. AOB 23-24; *Harris v. Wachovia Mortg., F.S.B.*, 185 Cal.App.4th 1018, 1023 (2010). A contract claim for breach of the implied covenant can be stated, but only by pleading facts showing that the defendant frustrated rights or reasonable expectations raised by a contract's express provisions. *Lingad v. Indymac Fed. Bank*, 682 F.Supp.2d 1142, 1154 (E.D. Cal. 2010).

The covenant of good faith exists "to protect the express covenants or promises of [a] contract." *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 799 (2008). Thus, the covenant must "'rest[ ] upon the existence of some specific contractual obligation.'" *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1160 (E.D. Cal. 2010) (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal.App.4th 1026, 1031-32 (1992)). In other words, the complaint must tether a defendant's alleged breaches of the implied covenant to particular express contractual obligations in order to state a viable claim for breach of the implied covenant.

Most of the Carsons' breach of implied covenant allegations fail this test. For example, they complain that BofA "strung out Plaintiffs' loan modification applica-

tion" by losing papers and then forcing plaintiffs to reapply and resubmit documenta-

tion. E.R. 258:9-15. They also claim BofA led them to believe they could obtain a

modification of the loan on the Connecticut Court property only later to discover no

modification was possible because that was an investment property. E.R. 258:16-22.

These allegations do not show a breach of implied covenant because "[t]here

existed no express contractual obligation here to negotiate a modification of the [loan]

contract." *Racine & Laramie, Ltd.*, 11 Cal.App.4th at 1032. Absent special circum-

stances, "there is no obligation in California to bargain for a new or amended contract

in good faith." *Id.* at 1035. So "[t]he fact that parties commence negotiations looking

to … the amendment of an existing contract, does not by itself impose any duty on

either party not to be unreasonable or not to break off negotiations, for any reason or

for no reason." *Id.* at 1034.

Similarly, it is no breach of good faith to foreclose when the borrower defaults.

*Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 479 (1989), *disapproved on other*

*grounds*, *Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n*,

55 Cal.4th 1169, 1182 (2013); *see* E.R. 258:23-26. That is true even if BofA said it

would not foreclose but was considering the Carsons for a loan modification. E.R.

258:23-26. Misstatements do not breach the implied covenant.

Finally, the Carsons stand in no better stead with their one remaining allegation

and argument on appeal; namely, that BofA breached the implied covenant by inter-

fering with their right to reinstate their loan. E.R. 258:4-8; AOB 26. For the reasons already stated, pp. 18-21 above, the Carsons did not effectively exercise their right to reinstate their loans. BofA did not prevent them from doing so. The Carsons never made a written request for a statement of the sums they owed. Their sole oral request for a reinstatement calculation was made only after the reinstatement period had already lapsed. *See* pp. 19-20 above. As the Carsons had already lost the right to reinstate by their own delay, BofA did nothing to frustrate their enjoyment of any right under the loan agreement's express terms. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc*., 2 Cal.4th 342, 373 (1992).

The Carsons did not allege facts sufficient to state a claim for breach of the implied covenant. The district court correctly dismissed their third cause of action.

## B.    The Carsons Have Forfeited Any Challenge To The Dismissal Of Their Fraud Claim

The district court dismissed the Carsons' fraud claim for not being pleaded with the specificity demanded by Fed. R. Civ. P. 9(b) and for failing to allege facts showing reasonable reliance. E.R. 14-15. The Carsons' opening brief ignores both the claim and the district court's reason for dismissing it.

Therefore, the Carsons have waived any challenge to the dismissal of the fraud claim. *See, e.g., Hillis v. Heineman*, 626 F.3d 1014, 1019 n.1 (9th Cir. 2010) (failure to address each of the district court's alternative holdings on appeal results in waiver); *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010) ("the failure of a party in

its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge."); *see generally Independent Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (explaining that this Court reviews issues which are argued specifically and distinctly in a party's opening brief).

**C.    The District Court Correctly Applied
        The Tender Rule To The Remaining Claims**

Because the Carsons did not effectively exercise their reinstatement rights and because they waited until after the trustee's deed upon sale had been recorded before filing suit, the district court correctly applied California's tender rule in dismissing the Carsons' claims for:  (1) violation of Civil Code § 2924; (2) breach of contract; (3) promissory estoppel; and (4) violation of Business & Professions Code § 17200. E.R. 9-17.  As the district court found, and the Carsons do not argue to the contrary, these claims were "implicitly integrated" with the supposedly wrongful foreclosures and sought redress from the trustee's sales.  E.R. 9-17.

As already explained, pp. 14-15 above, California law requires the Carsons "to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the [foreclosure] sale procedure." *Abdallah*, 43 Cal.App.4th at 1109.  This requirement applies to any claim "implicitly integrated" with the foreclosure sale. *See Karlsen*, 15 Cal.App.3d at 121.

The California courts apply the tender rule not merely to claims seeking to set aside a foreclosure, but also to those seeking damages:

> In *Arnolds Management Corp. v. Eischen*, 158 Cal. App.3d 575 (1984), for example, the plaintiff sought both a setting aside of the foreclosure and damages.  The plaintiff's request for damages was based on an alleged wrongful foreclosure as well as negligence and fraud—more specifically, because the defendant had represented that the foreclosure sale was set for a certain date when it was in fact set for an earlier date.  *See id*. at 577-78.  The *Arnolds* court did not make any distinction between the claim to set aside the foreclosure and the claim for damages with respect to the need to allege tender.  Instead, it held that the plaintiff had to allege tender of the indebtedness owed "as an essential element of any causes of action based upon irregularities in the sale procedure.  To hold otherwise would permit plaintiffs to state a cause of action without the necessary element of damages to themselves."  *Id*. at 580.

*Ottolini v. Bank of Am.*, 2011 WL 3652501, at *3 (N.D. Cal. 2011); *accord FPCI RE-HAB 01 v. E & G Inv., Ltd.*, 207 Cal.App.3d 1018, 1024 (1989); *Kariguddaiah v. US Bank Nat'l Ass'n*, 2012 WL 6601766, at *8 (Cal. Ct. App. 2012).

While the Carsons argue that an allegation of the reinstatement amount should have been sufficient to satisfy the tender rule, the district court correctly rejected that because the only specific attempt to reinstate came too late—the day of the trustee's sale of the Connecticut Court property.

**D.    The Carsons' Remaining Claims Fail Due To A Lack Of Facts Showing Causation Or Damages**

A common hurdle undermining the Carsons' remaining causes of action is that they have omitted facts showing that BofA caused them harm resulting in damages. Causation and damages are, of course, necessary elements to stating almost any tort or contract claim. *See generally Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1101 (E.D. Cal. 2010); *Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 233 (1997).

The Carsons never say why they ceased making their loan payments. They state the occurrence of two events: (1) BofA told them that "they needed to be late on their mortgage payments in order to obtain a loan modification;" and (2) they defaulted. E.R. 4. They leave a gap between 1 and 2, hoping the Court will assume facts bridging this gap. On a motion to dismiss, however, courts will not assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

From what little is alleged, it appears that the Carsons strategically defaulted on at least three different investment property mortgages in order to appear eligible for loan modifications programs. If the Carsons intentionally stopped making their payments in an attempt to reap the benefits of loan modification programs, then any resulting damages resulted from their own actions. *See, e.g., Lawrence v. Aurora*

*Loan Serv. LLC*, 2010 WL 364276, at *7 (E.D. Cal. 2010) (noting that "plaintiff invited the problems they face," when they "stopped making their loan payments to seek a loan modification."); *see also Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581, 598 (2009) ("had [plaintiff] made his monthly payments timely . . . in accordance with his obligations under the contract" he could have avoided the alleged injury caused by his lender's exercise of its remedies under the contract).[16]

Merely being told that default is an eligibility requirement for a loan modification program does not "cause" a default. An advisory statement by BofA on which the Carsons claim to have relied did not present them with a course of action they were required to take. Presenting borrowers with an option which is available to them, the consequences of which are clearly spelled out in the parties' contact, is not sufficient to demonstrate causality. Because the Carsons leave out of their pleading any explanation for why they defaulted, there is nothing to show that BofA caused the damages for which they seek relief.

The Carsons try to deal with this problem by alleging that BofA induced them to default. This does not work. Under California law, a party to a contract is not liable for liable for inducing its breach or intentionally inferring with it. *See, e.g.,*

---

[16] If, on the other hand, the Carsons defaulted because they lacked the ability to pay due to their financial circumstances, then their defaults were caused by their financial circumstances rather than anything BofA did.

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 514 (1994); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

The Carsons cannot shift responsibility for defaulting on their loans onto BofA. They decided to default in order to try to get better terms on their investment property mortgages. They caused their predicament and the resulting damage. At the very least, they have failed to allege sufficient facts that BofA caused them harm.

## E. The Carsons Have No Right To The Relief They Seek Under Civil Code Section 2924

The Carsons fail to allege a viable claim under Civil Code § 2924 because their complaint does not aver BofA did anything prohibited by or failed to do anything required by the statute. The Carsons' allegations that BofA violated Section 2924c by refusing the reinstatement amount they sent in on the day of the foreclosure also does not state a violation of that statute. E.R. 254.

As discussed previously, pp. 18-21, the Carsons do not allege any violation of or interference with their right to reinstate their loans.

The Carsons' allegation that the notices of default did not state the "nature of each breach actually known to the beneficiary" and were deficient because they included late fees and attorneys' fees also does not state a claim. E.R. 254-55. The notices, themselves, disprove the Carsons' assertion. The notice for the Connecticut Court property states a breach as follows:

> a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 11/01/2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES.

E.R. 142 (emphasis original). The other notice of default states the breach in similar language. E.R. 190.

Contrary to the Carsons' assertion, a notice of default may state that late fees and attorneys' fees must be paid to reinstate the loan. *See* Civ. Code § 2924c.

## F. The Carsons May Not Sue For Breach Of Contract Having Already Breached The Contracts Themselves

The breach of contract was properly dismissed because the Carsons already breached the loan agreements themselves. The standard elements for a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178 (2008) (citation omitted). The Carsons did not and could not allege facts showing that they performed on the loan agreements or were excused from doing so. They also allege no facts showing damage to themselves as previously discussed.

The Carsons allege that BofA breached section 19 of their trust deeds by interfering with their reinstatement rights. E.R. 256-57. As already shown, BofA did not interfere with reinstatement; the Carsons simply delayed too long. Moreover, by then the Carsons were already in default. E.R. 141-44; 189-92. They all but admit that they are strategic defaulters who, despite having the ability to make their payments as agreed,[17] nevertheless intentionally defaulted "in order to obtain a loan modification." E.R. 247. Having not performed on the loan contracts themselves, they may not sue BofA for breach of contract.

They attempt to get around this by arguing their default is excused because BofA supposedly induced them to breach their agreements. The allegations do not support any such inference. What the Carsons specifically aver is that BofA "told Plaintiffs that they needed to be late on their mortgage payments in order to obtain a loan modification." E.R. 247. Even if true, the decision to actually default and try to get better loan terms was the Carsons' own; nothing indicates that BofA either forced them to default or that it "induced" them to.

Besides, the Carsons knew that being late on their mortgages would not be excused. Section 12 of their deeds of trust provides that "[a]ny forbearance by Lender

---

[17]  They allege that "[t]hey had enough money in their emergency fund to reinstate the loan at any time in the future." E.R. 248; *see also* E.R. 253 ("Plaintiffs had substantial emergency funds and were ready, willing and able to pay the reinstatement amount to reinstate their mortgage if they had known the house was going to be sold.").

in exercising any right or remedy including, without limitation, Lender's acceptance of payments … in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy." E.R. 67, 171.

Finally, the Carsons misunderstand Section 19, the contractual provision on which they are rely. The section merely restates in substance the reinstatement right granted by statute in California. For the reasons already stated, the Carsons failed to invoke that right effectively. For the same reasons, they failed to invoke any rights under section 19 of their deeds of trust.

The Carsons have no viable breach of contract claim for all of these reasons.

## G.    The Promissory Estoppel Claim Is Defective

The Carsons do not state a claim for promissory estoppel.[18] To plead such a claim a plaintiff must allege, among other things, that an injustice that may be avoided only by enforcement of the alleged promise. *See Kajima/Ray Wilson v. Los Angeles Cnty Metro. Transp. Auth.*, 23 Cal.4th 305, 310 (2000); *Sutherland v. Barclays Am./ Mortg. Corp.*, 53 Cal.App.4th 299, 312 (1997). Moreover, a plaintiff must allege damage caused by the breach of the supposed promise. *U.S. Ecology, Inc. v. California*, 129 Cal.App.4th 887, 902-05 (2005). All elements of a promissory estoppel

---

[18] The Carsons allege that BofA represented that it received a reinstatement payment on the day of the sale "and thus promised Plaintiffs that their [Connecticut Court] home would not be sold that day." E.R. 262. As for the Willow Street investment property, the Carsons allege the BofA promised that is would not be sold at a trustee's sale because they had been approved for a loan modification. E.R. 262.

claim must be pleaded with specificity. *Smith v. San Francisco*, 225 Cal.App.3d 38, 48 (1990).

Having purposefully defaulted on their loans, the Carsons may not invoke the aid of an equitable doctrine such as promissory estoppel.[19] Here, the Carsons intentionally defaulted in order to seek loan modifications when they were otherwise able to make their payments as agreed, in order to take advantage of a loan program designed for borrowers who truly could not repay their loans. Therefore they cannot invoke the aid of equity.

> The doctrine [that he who comes into Equity must come with clean hands] demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim.

*Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal.App.4th 970, 978 (1999).

A court dealing with a nearly identical situation recognized that plaintiffs cannot cloak themselves with equity when they intentionally ceased payments of their loans. In *Lawrence*, 2010 WL 364276, at *1, plaintiffs alleged that their loan servicer would not consider a loan modification unless they were 60-90 days behind on their loan payments. In rejecting plaintiffs' equitable claims, the court explained that:

> The key problem with plaintiffs' equity arguments is that they ignore that plaintiffs invited the problems they face.

---

[19] Promissory estoppel is an equitable doctrine. *C&K Eng'g Contractors v. Amber Steel Co.*, 23 Cal.3d 1, 7-8 (1978); *U.S. Ecology*, 129 Cal.App.4th at 901-02.

> Plaintiffs stopped making their loan payments to seek a loan modification. Plaintiffs attempt to ignore conveniently their original loan obligations. Plaintiffs presuppose that Aurora was required to modify their loan. The FAC alleges no facts for such notion. Plaintiffs are unable to cloak themselves with equity when they attempted to usurp their original loan. Plaintiffs lost any equitable hold with their intentional cease of payments.

*Id*. at *7.

For a similar reason, the Carsons do not allege facts showing that injustice may only be avoided by enforcing BofA's purported promises. To the contrary, the Carsons could have avoided the foreclosures by paying their loans as agreed.

## H.    The Carsons Have No Right To Relief Under Business And Professions Code Section 17200

The Carsons' cause of action for an alleged violation of California's Business and Professions Code § 17200 fails to state a claim for relief. The remedies available under Section 17200 are "generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Co*., 29 Cal.4th 1134, 1144 (2003) (citation omitted). In other words, "[d]amages are not available under section 17203." *Cortez v. Purolator Air Filtration Prods.*, 23 Cal.4th 163, 173 (2000) (citation omitted).

The Carsons did not ask the district court to exercise its equitable powers to set aside the sale. As damages are not provided for under this statute, the remaining option is restitution. Restitution means to "restore to any person any money or property, real or personal, which may have been acquired by means of such unfair competition."

Bus. & Prof. Code, § 17203.  For restitution to be available, the "offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep."  *Day v. AT&T Corp.*, 63 Cal. App.4th 325, 340 (1998) (emphasis original).

There is no money to "restore" to the Carsons.  The Carsons borrowed $176,000 against the value of the Connecticut Court property.  E.R. 59-60.  They borrowed $116,250 against the value of the Willow Street property.  E.R. 163-64.  At the time of the trustee's sale, they owed $190,954.36 on the Connecticut Court mortgage.  E.R. 150.  At the time of the trustee's sale, they owed $130,029.62 on the Willow Street mortgage.  E.R. 204.  The Carsons borrowed far more than they ever repaid.  Even if BofA violated Section 17200, there is no money to be restored to the Carsons.  They have no right to any available relief under the statute.

The 17200 claim also suffers the same missing causation and damages elements absent in their other causes of action.  To state a 17200 claim, a plaintiff must allege facts showing causation and reliance.  *See Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326 (2011).  Under § 17200, a plaintiff must have: (1) "suffered injury in fact" and (2) "lost money or property *as a result of*" the alleged unfair competition.  *See* Bus. & Prof. Code, § 17204 (emphasis added).  "Consequently, 'a plaintiff must show that the misrepresentation [i.e., the unfair competition] was an immediate cause of the injury-

producing conduct ....'" *Kwikset Corp.*, 51 Cal.4th at 327 (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)).

The harm, i.e., the foreclosures, was caused by the Carsons' purposeful defaults. It was not caused by BofA's not accepting their deficient reinstatement payment the day of the sale or by BofA supposedly telling them that the foreclosure had been postponed.

This cause of action, like the others, was properly dismissed.

## IX.

## ISSUE PRECLUSION BARS THE CARSONS'
## NON-REINSTATEMENT CLAIMS

Other than claims based on the Carsons' botched efforts at reinstating their loans, all of their claims are barred as well by the doctrine of issue preclusion and the judgment dismissing their Derek Drive suit.

As already mentioned, p. 6 above, in the Derek Drive suit the Carsons alleged, with only minor, non-substantive variations, the exact same claims they re-pleaded in this suit. The district court dismissed the Derek Drive suit, finding the Carsons' second amended complaint in that action failed to state a claim on which relief could be granted. *See* RJN, Exs. B, C. The Carsons did not appeal. *See* RJN, Ex. D. The judgment of dismissal is final and entitled to issue preclusive effect.

In *Deutsch v. Flannery*, 823 F.2d 1361, 1364-65 (9th Cir. 1987), this Court held that the dismissal of a prior suit under Fed. R. Civ. P. 12(b)(6) for failure to properly

plead a viable claim fells a second suit by the same plaintiff under the doctrine of issue preclusion "[t]o the extent that there are no differences in the two complaints, or that the differences obviously lack substantive significance …."

Here, that rule applies to bar the Carsons' claims in this case. Apart from the claims arising from the alleged attempts to reinstate their loans, the Carsons' SAC in this case is a virtual carbon copy of their second amended complaint in the Derek Drive suit. Only the loans and encumbered properties differ. Otherwise, the allegations are the same, right down to the names of the BofA representatives who allegedly assured the Carsons they need not worry about defaulting on their loans.

The judgment in the Derek Drive suit establishes that those repeated allegations fail to state any claim on which relief may be granted. The doctrine of issue preclusion bars the Carsons from contending otherwise in this case.

## X.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND

The district court did not abuse its discretion in denying the Carsons leave to amend to file a fourth complaint. Neither in that court nor in this one have the Carsons suggested how they could amend to state any viable claim. It is not an abuse of discretion to deny leave to amend when, as is true here, the complaint's defects cannot be cured and any amendment would be futile. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

# XI.

## CONCLUSION

For the reasons stated above, the Court should affirm the judgment.  The Carsons' second amended complaint was properly dismissed.  Leave to amend was correctly denied.


DATED:  September 18, 2013          SEVERSON & WERSON
                                    A Professional Corporation



                                    By:     */s/ Jon D. Ives*
                                    _____
                                                Jon D. Ives

                                    Attorneys for Defendant and Appellee
                                    Bank of America, N.A.

# STATEMENT OF RELATED CASES

The Carsons filed a nearly identical lawsuit involving another investment property they owned.  That lawsuit was *Kim Carson and Jim Carson v. Bank of America, N.A.*, E.D. Cal. Case No. 2:12-cv-00739-MCE-CMK.  The district court granted Bank of America, N.A.'s motion to dismiss the Carsons' second amended complaint and entered judgment in its favor on December 5, 2012.  The Carsons did not appeal from the judgment in that case.

Dated:  September 18, 2013

                                           */s/ Jon D. Ives*
                                             Jon D. Ives

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 9,345 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman, 14 point type.

Dated:  September 18, 2013

_____
            */s/ Jon D. Ives*
                Jon D. Ives